## Potter v. Campbell, et al.

(Decided November 18, 1913).

## Appeal from Pike Circuit Court.

1. Elections—Mandatory Injunction to Compel Election Commissioners to Assemble and Act—Discretion as to Disputed Ballots. —Members of the board of election commissioners may be compelled by mandatory injunction, or by mandamus, to assemble and discharge the duties required of them by law. They may also be compelled, if there are no disputed ballots, to canvas the returns and issue the certificate of election to that candidate who has received a majority of the votes according to the certificate of the election officers, but if there are disputed ballots they have a discretion as to what action they shall take in respect to them, and while they may be compelled by a mandamus to act on these disputed ballots, they cannot be directed as to how they shall act.

2. Elections—Who Compose Board of Election Commissioners—Powers of Sheriff.—Under section 1596a of the Kentucky Statutes, the board of election commissioners is composed of the sheriff of the county and two other persons appointed respectively by the authorities of the two dominant political parties of the State, the sheriff, by virtue of his office, being a member of the board, with authority to preside at its meetings and, in case of disagreement between the other members, to vote.

3. Elections—Board of Election Commissioners—Sheriff Must Act as Member of Board—When Sheriff Disqualified Who May Take His Place.—Under subsection 2 of Sec. 1596a in any county where there is no sheriff or where the sheriff, from any cause, cannot act, the circuit clerk shall take his place as a member of the board; but if the sheriff is able to perform the duties of election commissioner, then he must act. The only causes that will prevent the sheriff from acting are such causes as to physically or mentally disqualify him from acting, or causes arising from his enforced absence. But if he is a candidate, while he must yet act as a member of the board, he cannot take any part in the decision of his own case.

4. Elections—Board of Election Commissioners—Who Compose.— No person has authority to act as a member of the board of election commissioners except the persons designated by statute to constitute the board, and so when the circuit clerk acted as a member of the board without authority, his acts were a nullity.

5. Elections—Powers of Board of Commissioners in Canvassing Returns When There Are No Disputed Ballots.—The election law provides in section 1483 that the election officers shall certify on the stub books the number of votes cast for each candidate, and if there are no disputed ballots returned by the election officers the duties of the board of commissioners are confined strictly to

adding up the votes cast for each candidate as shown by the certificate of the election officers, and when they have thus added up the votes, it is their duty to issue the certificate to that candidate who has received, according to the certificate of the election officers, a majority of the votes. Their duties are purely ministerial. They have no discretion whatever to exercise.

6. Elections—Powers and Discretion of Election Commissioners in Respect to Disputed Ballots.—If disputed ballots have been returned by the election officers, the board of commissioners are invested with discretion as to them, and it is the duty of the board to examine these ballots and determine for whom they should or should not be counted, and if, in their judgment, any of these ballots should have been counted for any candidate, but the statement of the election officers show they have not been so counted, the board should add to the vote certified to by the election officers the additional votes found in these disputed ballots. On the other hand, if they find that disputed ballots have been counted which, in their opinion, should not have been counted, they should subtract the votes from the vote the election officers certified the candidate received.

7. Elections—Powers of Election Commissioners with Respect to Disputed Ballots—Returns and Statement of Election Officers Concerning Disputed Ballots.—If disputed ballots are not identified as required by section 1482 of the statute, or if the statement of the election officers accompanying them does not show how they were acted on by the election officers, the board should not consider them at all, or add any of them to or subtract any of them from the vote of any candidate as certified to by the election officers. In other words, they should ignore the disputed ballots entirely unless they are identified in the manner indicated by the statute and accompanied by the statement mentioned in the statute.

E. D. STEPHENSON and HOBSON & HOBSON for appellant.

J. J. MOORE, J. S. CLINE for appellees.

OPINION OF THE COURT BY JUDGE CARROLL—Overruling motion to dissolve or modify injunction.

This case comes before me on a motion to modify or dissolve a mandatory injunction issued by the Hon. M. M. Redwine, judge of the Thirty-second Judicial District. The facts upon which the mandatory injunction was granted by Judge Redwine are these: At the November election, 1913, George W. Potter was the Democratic candidate for the office of superintendent of common schools of Pike County, and M. F. Campbell was the Republican candidate for this office, there being no other

candidates for this office. The certificates of the election officers according to the averments of the petition showed that Potter had received 3,902 votes and Campbell 3,760 votes, thus giving Potter a majority on the face of the returns made by the election officers of 142 votes.

Hi Pauley is and was the sheriff of Pike County, and J. D. Meade was and is the duly appointed and qualified member of the board of election commissioners of Pike County for the Republican party. On and prior to November 7th J. R. Johnson, Jr., was the regularly appointed and qualified Democratic member of the board of election commissioners for that county, but on November 8th Johnson, who was unable on November 7th on account of illness to perform the duties of the office, resigned, and on the same day S. M. Cecil was duly appointed to fill the vacancy occasioned by the resignation of Johnson, and thereupon qualified and became the Democratic member of the board of election commissioners. J. A. Scott was and is the circuit court clerk of Pike County.

On November 7th, the day appointed by law for the election commissioners to meet and canvass the returns, there was present when the commissioners met, Pauley, the sheriff, and Meade, the Republican member of the board, Johnson, the Democratic member being absent on account of illness. Before the board of commissioners took any action toward canvassing the returns, Pauley, the sheriff, conceiving that he was disqualified to act as a member of the board, left the room in which the commissioners had assembled, and thereupon J. A. Scott, circuit court clerk of Pike County, supposing that he had authority to act in the place of Pauley, took the place of Pauley as a member of the board. The board as thus organized consisted of Scott and Meade. This board, after canvassing the returns of the election officers in the manner they believed they had the right to canvass them, found that Campbell had received 3,503 votes and Potter 3,499 votes, and thereupon Scott and Meade signed, issued and delivered to Campbell a certificate showing his election to the office of county superintendent.

On November 11th this suit in equity was brought by Potter against Campbell, Pauley, Scott, Meade and Cecil. The petition, after setting out in a general way the facts heretofore stated, averred that on the face of

the returns by the election officers Potter had received a majority of 142 votes, and was, therefore, entitled to have issued to him by the board of election commissioners a certificate showing his election to the office; that Pauley, as sheriff, was not disqualified from acting as election commissioner, and Scott, the circuit clerk, had no right or authority to act as a member of the board; that, when the certificate of election was issued to Campbell, the board of election commissioners was composed of Pauley, Meade and Cecil; that this board, or any two of them, had never canvassed the election returns, or issued a certificate of election to either of the candidates for the office of county superintendent; that the certificate of election issued to Campbell was only signed by one member of the board of election commissioners; to-wit, Meade.

The petition further asked a mandatory injunction against Pauley, Meade and Cecil, compelling them to meet together in the county clerk's office of Pike County and canvass and certify the votes for the office of county superintendent of schools in the race between Campbell and Potter, and award a certificate of election to the candidate having the highest number of votes as shown on the face of the returns as made by the election officers. It was further asked that Scott, as circuit clerk, be restrained from acting with or taking any part in the proceedings of the board.

It further appears from the answer and affidavits filed with the record that Pauley, the sheriff, declined to act as a member of the board of election commissioners because he believed he was disqualified, for the reason that two persons who had been and were his deputies were candidates for the office of sheriff of Pike County at the November election, 1913, and that the circuit clerk believed it to be his duty to act in the place of the sheriff when the sheriff was disqualified.

It further appears from the affidavits that the returns as certified to by the election officers showed that Potter had received a majority of 142 votes, but Scott and Meade, exercising the duties of election commissioners, came to the conclusion from the facts and evidence at their disposal that the election officers in several precincts had erroneously and improperly counted twice for Potter and Campbell the votes of the women who had voted for each of them. This mistake, as these persons acting as election commissioners be-

lieved, arose in this way. At several precincts a number of women voted for Potter and a number also voted for Compbell, the votes of the women being cast on separate ballots made out for the office of county superintendent alone. But the election officers, in making out their general certificate of the-number of votes cast, added to the votes of Potter and Campbell cast by men, the votes cast for each of them by women, and found and certified the total vote cast for each to be the number of votes cast for each by both men and women, and after doing this they further certified that Potter and Campbell had each received the number of votes cast for each by the women. Thus the certificate of the election officers showed that Potter and Campbell at these precincts had received more votes than they actually did receive.

It may here be observed that we do not mean to say that this character of mistake was made by the election officers or that any mistake of any kind was made by them in certifying the number of votes received by Potter and Campbell. We merely mention this matter for the purpose of explaining the position of Scott and Meade, who, in canvassing the returns for this office, deducted from the votes received by Potter and Campbell as certified to in the general certificate signed by the officers of the election the votes of the women that it was certified each of them had received. By this process of canvassing, the returns showed, as Scott and Meade claimed, that Campbell received the majority of the votes.

Upon these facts Judge Redwine granted the mandatory injunction applied for and directed "Hi Pauley, sheriff, and J. D. Meade and S. M. Cecil, members of the board of election commissioners for Pike County to meet together in the county court clerk's office of Pikeville and count, canvass and certify the returns in the race between the plaintiff, Potter, and the defendant, Campbell, for superintendent of common schools of Pike County at the election held November 4, 1913, and to issue and award a certificate of election to the candidate in said race having the highest number of votes on the face of the returns as certified to by the precinct officers of the election, in accordance with the prayer of the petition. It is further ordered that said board be and is hereby ordered and enjoined and restrained from making any changes in the face of the returns as certified to them by the precinct officers of said election. It is

further ordered that J. A. Scott, circuit court clerk of Pike County, Kentucky, be and is hereby enjoined and restrained from meeting or attempting to meet or acting or attempting to act as a member thereof or interfering with Hi Pauley, sheriff, acting as a member of said board.''

Four questions are presented for decision. First, was a mandatory injunction the proper remedy, or should Potter have proceeded by a mandamus? Second, who composed the board of election commissioners, and what will disqualify the regular commissioners from acting, and if one of them is disqualified, who shall take his place? Third, the discretion and powers of election commissioners in canvassing returns. Fourth, was the order issued by Judge Redwine too broad.

In cases like this, is a mandatory injunction the proper remedy or should relief be sought by a mandamus? There is no doubt that members of the board of election commissioners, who are ministerial officers, may be compelled by a mandamus to assemble and discharge the duties required of them by law; Civil Code, section 477; Anderson v. Likens, 104 Ky., 699; Weaver v. Toney, 107 Ky., 419; McEwen v. Cary, 123 Ky., 536. But the remedy by a mandamus would in many cases be too slow to afford adequate relief, and so we have written in more than one case that a mandatory injunction may be issued upon a proper statement of facts to compel election commissioners to assemble and perform their duty; Denny v. Bosworth, 113 Ky., 785; Bennett v. Richards, 83 S. W., 154; Mason v. Byrley, 26 Ky. Law Rep., 487.

It is provided in section 1596a, subsection 2, of the Kentucky Statutes, that the county board of election commissioners shall consist of three members, two of whom shall be appointed respectively by the authorities of the two dominant political parties of the State, the sheriff of the county to be third member, and that ''the sheriff of the county by virtue of his office shall be a member of said board, and shall preside at its meetings, and in case of disagreement between the other members of said board, acting as umpire, he shall be permitted to vote.''

It is further provided in this sub-section that ''A majority of said board, consisting of the two members appointed as aforesaid from said two political parties, or one of said two members and the sheriff of the county

shall constitute a quorum for the transaction of the business of the board. * * * If a vacancy 'shall occur in the board it shall be filled by appointment by the State Board from names already designated to the State Board as hereinbefore provided; and the member so appointed shall be of the same political party as his predecessor; in counties where there is no sheriff or where from other causes the sheriff cannot act the circuit court clerk shall act in his place."

In sub-section 5 it is provided that "Any two of the members of said board may constitute the board, but if either be a candidate he shall have no voice in the decision of his own case."

Section 1596a is an act passed by the Legislature in 1900, and was not a part of the general election law of the State which was adopted in 1892. This act does not undertake to regulate elections in a general way but only deals with boards of election commissioners, their appointment, qualifications and duties; the appointment and qualifications of election officers, and the manner of contesting elections. There are some other matters incidental to these embraced in the act, but the subjects mentioned are the principal ones covered by the act.

Under the provisions of the general election law of 1892 the sheriff of the county is charged with many duties relating to elections, some of them being the delivering of ballot boxes and the securing of places to hold the election. It is also provided in section 1451 of this general law that "If the office of sheriff is vacant, or if the sheriff, or his deputy, is a candidate at any election, all his duties pertaining to that election shall be performed by the coroner and such deputies as he may appoint for that purpose. If the coroner is absent, or his office vacant, or he is a candidate, then such duties of the sheriff shall be performed by some person appointed for that purpose by the presiding judge of the county court, and the deputies of such person."

This section has reference to the duties the sheriff is required to perform in connection with and preliminary to the holding of the election excepting the appointment of election officers and does not include any duties that he performs as a member of the board of election commissioners. Under section 1451 if the office of sheriff is vacant, or if the sheriff or any of his deputies is a candidate, then all the duties imposed by law upon

the sheriff with respect to the delivering of the ballot boxes, securing voting places and other things preliminary to the election not including the appointment of election officers shall be performed by the persons mentioned in section 1451; but when the sheriff comes to act as a member of the board of election commissioners under the authority of the act of 1900 for the purpose of performing his duties as a member of the board, we must look to that act for a description of his qualifications, powers and duties as a member of the board, and also find from it who must act in his place if for any reason he cannot act in performing any of the duties imposed on him by this act as a member of the board.

It will be observed that there are two distinct statutes relating to the powers, duties and qualifications of the sheriff in the discharge of his duties under the election law. One of these is the general election law of 1892 and the other is the act of 1900, now section 1596a. Each of these statutes in respect to the matter under consideration is complete in itself and relates to widely separated duties the sheriff is called on to perform.

It is provided in sub-section 5 of section 1596a that when the sheriff comes to act as a member of the board of election commissioners in canvassing returns he shall have no voice in the decision of his own case, if he be a candidate, but if he is not a candidate and is able to perform the duties of election commissioner in this respect then he must act, and even if he be a candidate he must nevertheless act as a member of the board in performing this duty except that he shall not take any part in the decision of his own case. If, however, there is no sheriff, or from any cause he cannot act as a member, the circuit court clerk shall act in his place. But the causes that will prevent the sheriff from acting as a member of the board in the performance of any of the duties required by the act are manifestly such causes as physically or mentally disqualified him from acting, or causes arising from his enforced absence. The fact that he is a candidate, or that his deputies are candidates, does not disqualify him from acting as a member of the board.

From these views it necessarily follows that the circuit court clerk, Scott, had no authority to act as a member of the board of election commissioners, and, therefore, what he did was a nullity. It also follows that the election returns were not canvassed by the board of

election commissioners, or any two of them, nor was the
certificate of election issued by the board, or any two
of them, as Meade was the only authorized member of
the board who participated in canvassing the returns or
in issuing the certificate.

The case of Batman v. Megowan, 1 Met., 533, is re-
lied on as authority for the position that, as under sec-
tion 1451 the sheriff was disqualified to act in the pre-
liminary stages of the election on account of the fact
that his deputies were candidates, this disqualification
also prohibited him from acting as a member of the
board of election commissioners. The court so held in
this case, but the statute involved was quite different
from the one now in force.

What discretion and powers have the board of elec-
tion commissioners in canvassing returns? The elec-
tion law provides in section 1483 that the election offi-
cers shall certify on the stub books the number of votes
cast for each candidate, and if there are no disputed bal-
lots returned by the election officers, the duties of the
board of election commissioners are confined strictly to
adding up the votes cast for each candidate, as shown
by the certificate of the election officers, and when they
have thus added up the votes, it is their duty to issue the
certificate to that candidate who has received, according
to the certificates of the election officers, a majority of
the votes. They have no power to go behind the returns
made by the election officers or to inquire into the cor-
rectness of their certificates showing the number of
votes cast for the various candidates. Their duties are
purely ministerial. They have no discretion whatever
to exercise.

If, however, disputed ballots have been returned by
the election officers, the board of commissioners are in-
vested with discretion as to them. Section 1482 pro-
vides that: "If there are any ballots cast and counted or
left uncounted, concerning the legality or regularity of
which there is any doubt or difference of opinion in the
minds of the judges of the election, said ballots shall be
placed in the large linen envelope furnished by the
county court clerk for that purpose and sealed up, and
across the seal thereof the officers of the election shall
plainly write their names, and at the point of the seal
indicated for that purpose the judges of the election
shall, in the presence of the clerk and the sheriff, place
the county election seal in hot wax, as above described,

so that it can plainly be read, and they shall be returned to the clerk of the county court with the returns of the election, for such judicial or other investigation as may be necessary, with a true statement as to whether they have or have not been counted, and if counted what part and for whom.''

If any disputed ballots are returned in this manner by the officers of election, it is the duty of the board of election commissioners to examine these ballots and determine for whom they should or should not be counted, and if, in their judgment, any of these ballots should have been counted for any candidate but the statement of the election officers show they have not been so counted, the board should add to the vote certified by the election officers the additional votes found in these disputed ballots that should have been counted for such candidate, and then issue the certificate to the candidate who has received a majority of the votes. On the other hand, if the statement of the election officers shows that these disputed ballots, or any of them, have been counted for any candidate, and the board of election commissioners reach the conclusion that the ballots so counted should not have been counted, it is their duty to subtract the votes found in the disputed ballots that should not have been counted from the vote the election officers certified the candidate received, and then issue the certificate to the candidate who received a majority of the votes. In Houston v. Steele, 98 Ky., 596, and in Booe, County Judge v. Kenner, 105 Ky., 517, the discretion and duty of the board of election commissioners in respect to the disputed ballots is fully discussed.

The remaining question is, was the order issued by Judge Redwine too broad? The record does not show that any disputed ballots were returned by the election officers in this race, and, therefore, assuming this to be true the order of Judge Redwine is not too broad, as the only duty the board of election commissioners had to perform was the purely ministerial one of adding up the number of votes received by each of these candidates and issuing the certificate to that candidate who, according to the certificate of the election officers had received a majority of the votes, and this ministerial duty it was proper to compel the board of election commissioners by a mandatory injunction to assemble and perform.

If, however, there were disputed ballots returned by the election officers in this race, the board of election commissioners have the right to exercise a discretion in respect to them, and this discretion cannot be controlled by a mandatory injunction or mandamus. They can be required by mandatory injunction or mandamus to consider and act on these disputed ballots, but cannot be directed as to how they shall count them. Booe v. Kenner, supra. So that when the board of election commissioners assemble as directed by the order of Judge Redwine, if no disputed ballots were returned in this race they will simply add up the votes the election officers certified each of these candidates received and issue a certificate of election to that candidate who has a majority. If disputed ballots were returned in this race and the statement shows they were not counted they can exercise their discretion as to which one of the candidates these disputed ballots should be counted for if they should be counted at all and add to the votes certified by the officers the votes the disputed ballots show either of the candidates entitled to. Or, if the statement with these disputed ballots show that any of them were counted for either of these candidates, and in the judgment of the board of election commissioners the disputed ballots counted should not have been counted, they may subtract the ones that should not have been counted from the vote of the candidate for whom they were counted.

It might perhaps be well here to add for the guidance of the election commissioners that if the election officers observe the requirements of section 1482, they must accompany the disputed ballots with a statement signed by the officers showing whether or not any of these ballots were counted, and if so, for whom, and the commissioners have a right to examine these disputed ballots and decide for whom they should be counted, if counted at all.

If, however, these disputed or questioned ballots are not identified as required by section 1482, or if the statement of the election officers accompanying them does not show how they were acted on by the election officers, the board should not consider them at all or add any of them to or subtract any of them from the vote of any candidate as certified to by the election officers. In other words, they should ignore the disputed ballots entirely unless they are identified in the manner indicated by

the statute and accompanied by the statement mentioned in the statute. Strauss v. Johnson, 100 Ky., 319; Edwards v. Logan, 114 Ky., 312; Childress v. Pinson, 30 Ky. L. R., 767; Weller v. Muenninghoff, 155 Ky., 77.

When the board has canvassed the returns as herein indicated, they should issue the certificate to that candidate who has received a majority of all the votes, and after the certificate has been issued, either of the parties who feels himself aggrieved may contest the election in the manner provided by law.

The motion to dissolve or modify the injunction issued by Judge Redwine is overruled. The whole court, except Chief Justice Hobson, sat with me in hearing and disposing of this matter and concur in this opinion.