### Potter v. Campbell.

(Decided June 2, 1914.)

## Appeal from Pike Circuit Court.

1. Elections—Contests—Re-examination of Ballots and Re-count.— The test of the admissibility of the ballots in evidence upon a contest is their preservation in such manner as to insure their identity, and that they have not apparently been tampered with. A substantial compliance with the requirements of the statute as to placing the ballots on a string, wrapping, sealing them, etc., is sufficient.

2. Elections—Contests—Petition.—It is unnecessary that contestant allege eligibility for the office in controversy; the question of eligibility of either contestant or contestee cannot be adjudicated upon contest proceedings.

3. Judges—Disqualification to Act—Objections to Judge and Proceedings Thereon.—Where in an election contest, motion was made that the regular judge vacate the bench, said motion being supported by the affidavits of the contestant, held that although under the facts set up in the affidavits, the judge should not have tried

the case, still as the proceeding was in its nature equitable and the entire record including the ballots themselves are before the court for its inspection, whatever prejudice was worked against contestant in the circuit court, may here be remedied.

4. Elections—Contests—Re-examination of Ballots and Re-count.— The mere fact that the clerk of the election failed to sign his name on the back thereof will not invalidate it if such failure was through inadvertence.

HOBSON & HOBSON and E. D. STEPHENSON for appellant.

J. J. MOORE, W. W. REYNOLDS and J. S. CLINE for appellee.

OPINION OF THE COURT BY JUDGE HANNAH—Affirming.

At the November election, 1913, the appellant, Potter, was the Democratic candidate, and appellee, Campbell, the Republican candidate, for the office of Superintendent of Common Schools of Pike County.

Upon a canvass of the returns of the election by persons purporting to act as a Board of Election Commissioners, a certificate of election was awarded by them to Campbell, the propriety of which proceeding was involved in the action of Potter v. Campbell, 155 Ky., 784, wherein this court declined to set aside a mandatory injunction granted by Circuit Judge Redwine directing the Election Commissioners *de jure* to meet and canvass the returns of the election mentioned.

Upon a canvass thereof by the proper members of the Board of Election Commissioners, a certificate of election was by them awarded to Potter, his majority on the face of the returns being one hundred and seventeen votes; and Campbell thereupon instituted this action contesting the election of Potter, the principal ground of the contest being fraud and mistake in the counting of the ballots in certain precincts, and particularly in many of the precincts by twice certifying the ballots cast by women—first by including them in the certification of the ballots cast by men, and again by certifying them on the stub book from which the ballots cast by women were taken.

Upon a trial of the cause, the circuit court rendered a judgment declaring the contestant, Campbell, elected by a majority of thirty-three votes. From that judgment Potter appeals.

1. The first question presented upon the appeal is whether the eligibility of the contestant may be determined upon a contest proceeding.

Appellant contends that Campbell, the contestant, is not eligible to hold the office of County Superintendent of Common Schools for the reason that he had not complied with Section 1 of Chapter 117 of the Acts of 1912, which provides that "no person shall be eligible to hold the office of County Superintendent of Common Schools except such county superintendents as are now in office, and such persons as shall have obtained a state diploma, a state certificate, or a certificate of qualification issued by the State Board of Examiners," arguing that the fact that at the time of the election, Campbell was the then duly elected, qualified and acting county superintendent, did not make him eligible for re-election, but that a proper construction of the act gave to those county superintendents then in office only the right to complete the remainder of the terms they were then serving.

Prior to the enactment of Kentucky Statutes, Section 1596a, the law provided that the eligibility of the successful candidate was a matter to be determined by the contest board. Stevens v. Wyatt, 16 B. Mon., 547. And, in Grinstead v. Scott, 82 Ky., 88, it was held that the defeated candidate had a right to contest the election of his successful opponent upon the ground of the latter's ineligibility, though ineligible himself.

By the act of October 24, 1900, Kentucky Statutes, Section 1596a, the right to try election contests was taken away from the boards of contest and conferred upon the circuit courts, and the procedure was prescribed. Of that act, in Wilson v. Tye, 122 Ky., 508, 29 R., 71, 92 S. W., 295, the court said:

"In our opinion, when the Legislature enacted this statute in lieu of the former statute, with reference to the trial of contested elections, it was intended to relegate the question of eligibility or legal qualifications for the office to a different or other mode of procedure." To the same effect, see Nichols v. Penington, 118 S. W., 382.

In both of the cases mentioned, the eligibility sought to be questioned was that of the contestee, but the views therein expressed as to the legislative intent apply likewise to the eligibility of the contestant.

2. It is also contended by appellant that the judge who tried the case in the circuit court erred to the prejudice of appellant in refusing to vacate the bench.

The petition was filed on November 28, 1913. A demurrer to the petition, and an answer were filed on December 17, 1913. The first term of the Pike Circuit Court thereafter began on the third Monday in February. On the first day of that term and before the submission of any preliminary motion, Potter filed his affidavit and motion asking that Hon. John F. Butler, presiding judge of the court, vacate the bench. On the third day of the term and before the submission of any other preliminary motions, Potter filed a supplemental affidavit in support of said motion, setting up additional grounds of objection. The motion was overruled.

In view of the conclusions we have reached on the whole case, we will not go into details concerning the contents of these affidavits; nor do we deem it necessary to say whether or not the same were sufficient. The proceeding is equitable in its nature; the entire record is before this court; even the ballot boxes and their contents are here for our inspection; and whatever prejudice, if any, was worked in the circuit court by the refusal of the trial judge to vacate the bench, may here be remedied.

3. It is next contended by appellant that the court erred in recounting the ballots from certain precincts upon motion of the contestant, the ground of the contention being that resort to the ballots as evidence was improper because they were not shown to have been preserved according to law.

It was proven by the county court clerk that the ballot boxes from the several precincts of the county were delivered to him on the night of the election and the day following, by the proper officers from each precinct; that upon receipt of each ballot box, he opened it, examined the contents thereof, receipted to the officers therefor, re-locked the box, delivered to each officer a key to one of the locks, each box having two locks thereon; that he then placed the ballot boxes in a room adjoining his main office; and in three or four days after the election, having heard some talk of a contest, he had a mechanic solder and seal each box with a metal substance to preclude all possibility of their being tampered with.

He admitted that two or three days after the election he gave two members of the Board of Election Commissioners a key to his office in order that they might canvass the returns; but both the Commissioners testified that neither of them touched the boxes nor permitted anyone else to do so.

When the ballot boxes were produced upon the trial, the locks and metal seals were found intact; and there was nothing in the appearance of the boxes to show that they had been tampered with. It is not seriously contended by appellant that the ballots themselves show any indication of having been changed; it is virtually conceded that they do not so show; but it is contended that as in none of the precincts so recounted was there a strict compliance with all the provisions of the statute as to the manner of placing the ballots on a string, wrapping, sealing and placing them in the envelope, they cannot be recounted.

It has never been held that these provisions of the statute are mandatory as to the counted or unquestioned ballots. An examination of the authorities shows that the real test of their admissibility is their preservation in such manner as to insure their identity, and that they have not apparently been tampered with. Edwards v. Logan, 114 Ky., 312, 70 S. W., 852, 24 R. 1099; Baker v. Dinsmore, 127 S. W., 998, 138 Ky., 277; Hamilton v. Young, 26 R. 447, 87 S. W., 682; Browning v. Lovett, 139 Ky., 480, 94 S. W., 661, 28 R. 692; Scholl v. Bell, 125 Ky., 750, 102 S. W., 248, 31 R. 335; McEuen v. Carey, 29 R., 931, 96 S. W., 851; Lester v. Fogarty, 30 R., 759, 99 S. W., 910; Morgan v. Sparkman, 143 Ky., 27, 135 S. W., 408; Hackney v. Justice, 159 Ky., 167.

4. It is apparent from an examination of the figures that the errors in most of the precincts were due to the fact that the election officers counted the ballots cast by women twice in making up the returns; but in one precinct, Lick No. 4, the discrepancy between the certificate and the ballots themselves is not so easily explained.

In that precinct, the stub book showed that three hundred and five ballots were cast by men; but the certificate gave Potter two hundred and twenty-five and Campbell one hundred and seventy-eight, a total of four hundred and three votes. The count of the ballots themselves gave Campbell one hundred and sixty-three and Potter one hundred and forty-two.

The ballots cast by women as shown by the stub-book were ninety-three, the certificate giving Campbell thirty-four and Potter sixty, while the recount gave Campbell forty-four and Potter forty-nine.

It will thus be seen that the certificate showed ninety-eight more votes by men than there were ballots actually cast, and that while Campbell lost fifteen on the recount, Potter lost eighty-three, Campbell gaining ten on the re-count of the ballots cast by women and Potter losing eleven thereon, making a net gain in this precinct of eighty-nine votes, which with the gains in other precincts caused by twice including the ballots cast by women, produced the majority of thirty-three in favor of the contestant as found by the court.

An inspection of the ballots cast in this precinct is convincing of the fact that such a change has not been effected by any tampering with them. But few ballots were found where Campbell has been voted for by crossing over on tickets voted under the Democratic device, whereas Potter received quite a number of votes by crossing over on ballots voted under the Republican device. The ballots cast by women were necessarily voted for either Campbell or Potter, as theirs were the only names thereon; and these bear no indication of having been changed.

5. In Hellier Precinct, the officer of the election certified that about forty ballots had been cut out of the ballot book containing the ballots for women (presumably the night before the election) and slipped into the ballot-box, all being voted for Potter; and that when the count was in progress these forged ballots were discovered by reason of the clerk's name on the back thereof not being in his handwriting, and they were then separated and sealed up and not counted.

Upon the trial, the court appointed two Democrats to represent Potter and two Republicans to represent Campbell in re-counting the ballots, and these commissioners all agreed that the ballots mentioned above were forgeries and should not be counted.

6. It appears that the court refused to permit to be counted for contestant twenty-one, and for contestee four ballots, upon the reverse side of which the clerk of the election had failed to sign his name. If this were the only defect, and it is the only defect shown, these ballots should have been counted. The mere inadvert-

ent failure of the clerk to sign his name thereon does not invalidate the ballot. Orr v. Kevill, 124 Ky., 720, 100 S. W., 314, 30 R., 946.

7. It is also contended by appellant that contestant received fifteen bribed votes. Conceding this, it would not affect the result, as Campbell would still have a safe majority; and an election will not be set aside for bribery unless the result is affected to such an extent that it cannot be determined who was elected. Scholl v. Bell, *supra*.

8. Appellant finally contends that the circuit court erred in overruling exceptions to certain depositions taken by appellee but not filed within the thirty days allowed the contestant for taking proof, nor within the twenty days given the contestee for the taking of proof.

The statute does not provide any specific time within which the depositions must be filed; the attorneys for appellant had in their possession at all times after the taking thereof, carbon copies of the depositions mentioned, and there is no charge that the filing thereof was delayed through any improper motives. Under the circumstances, the court properly refused to quash them.

There are some other minor contentions presented by appellant, but upon a consideration of the whole record, we are convinced that the judgment in the circuit court was right.

It is therefore affirmed; the whole court sitting.