## Combs v. Dixon.

(Decided May 28, 1926.)

### Appeal from Leslie Circuit Court.

1. Elections—Name of Candidate, Whose Certificate of Nomination was Not Filed 45 Days Before General Election, was Not Lawfully on Ballot, and He Received no Lawful Votes.—Name of candidate, whose certificate of nomination was not filed with county clerk 45 days before general election, was not lawfully on ballot, and hence he received no lawful votes in such election.

2. Elections—Names of Persons, Whose Names and Post Office Addresses are Not Designated in Nominating Petition Signed by Them, Cannot be Counted, where Petition does Not Recite, nor Evidence Show, that they were Citizens or Residents of County (Ky. Stats., Sec. 1453).—Names of persons, whose residences and post office addresses are not designated on nominating petition signed by them, as required by Kentucky Statutes, section 1453, cannot be counted in determining whether petition was signed by requisite number of qualified electors, where county is large and petition does not recite that they are citizens or residents of county, but only that they are "legal voters" therein, and there is no averment or proof that county clerk had any other information

as to their residences or post office addresses, nor any evidence that they were residents of county, or qualified to vote for nominee.

3. Elections.—Names of persons not signing, nor authorizing, directing, or consenting to another signing, their names to nominating petition cannot be counted.

4. Elections—Whether Statute was Satisfied by Designation of Post Office Addresses and Residences of Certain Nominating Petitioners Need Not be Decided, where Nominee had Less than Required Number of Lawful Names to Petition (Ky. Stats., Sec. 1453).— Where nominee had less than 100 lawful names, required by Kentucky Statutes, section 1453, to nominating petition, Court of Appeals need not decide, on appeal from judgment dismissing contest of his election, whether designation of certain petitioners' post office addresses and residences satisfied statute.

5. Elections—Nominee, Not Filing Nominating Petition with Requisite Number of Names, was Not Lawfully on Ballot, and Received no Votes (Ky. Stats., Sec. 1453).—Nominee, not filing nominating petition with number of lawful names required by Kentucky Statutes, section 1453, was not lawfully on ballot, and hence received no votes at general election.

6. Elections—Candidate Without Requisite Number of Signers to Nominating Petition May Contest Opponent's Election, though not Himself Entitled to Office.—Though candidate without requisite number of signers to petition for nomination as county judge could not be declared elected to such office, he could contest election of opponent.

7. Judges—Where Neither Candidate's Name was Lawfully on Ballot, there was No Election, and Vacancy Exists, to be Filled According to Law.—Where name of neither of two candidates for county judge was lawfully on ballot because of absence of requisite number of signers to nominating petition and failure to file petition in time, respectively, there was no election, and vacancy exists, which must be filled according to law.

M. C. BEGLEY and MARTIN T. KELLY for appellant.

L. D. LEWIS, J. M. MUNCY and J. M. BICKNELL for appellee.

OPINION OF THE COURT BY JUDGE DIETZMAN—Reversing.

In the November, 1925, election, the appellee, William Dixon, appeared on the ballot as the Republican nominee for the office of county judge of Leslie county and the appellant, Jason Combs, appeared on the same ballot as an Independent candidate for that office. The county board of election commissioners thereafter duly canvassed the returns as required by law, and found that the appellant and appellee had received on the face of the returns 471 and 1,756 votes, respectively. The appellee

receiving the larger number of votes, he was awarded the certificate of election; whereupon the appellant filed this contest proceeding against him. After alleging that he had been duly nominated by a petition signed by more than 100 electors qualified to vote for candidates for the office in question, which petition he had filed with the county clerk more than 45 days prior to the general election in November, appellant then stated, in his petition, that at that election his name was duly and legally printed upon the official ballot. He then set out as the fundamental ground of his contest the fact that the name of the appellee had not been lawfully printed on the ballot in that appellee had not filed, on or before 45 days before the general election in November, with the county clerk the certificate of nomination he had received in the preceding August primary. By answer and counter-contest the appellee traversed all the allegations of appellant's petition and then affirmatively averred that he had filed his certificate of nomination with the county clerk more than 45 days before the general election. He next alleged that his name had also been certified to the county clerk as the Republican nominee for the office of county judge in accordance with the provisions of sections 1464 and 1550-5 of the statutes, providing for nominations by a political party where a vacancy has occurred among its candidates for office. For counter-contest, appellee claimed that a number of voters had written his name on the ballots used in the November election, and then voted for him, which votes had not been correctly counted and certified by the election officers. He asked that the ballot boxes be opened, a recount had of the ballots and these votes counted for him. However, the record fails to show that the ballot boxes were ever opened or the ballots therein counted. By an amended petition, appellant set up an alleged additional ground of contest. A demurrer was sustained to this amended petition. Appropriate pleadings made up the issues. After proof had been introduced by both sides, the lower court held that both appellant and appellee were lawfully on the ballot in the general election, and that appellee, having received the larger number of votes, had been legally elected to the office of county judge. He thereupon dismissed appellant's contest. From that judgment appellant brings this appeal. So far as the grounds of contest relied on by the appellant are concerned, this case is absolutely on all fours with the case of Lewis v. Mosely, this day decided,

215 Ky. 573, 286 S. W. 793, and for the reasons therein set out, we hold that the appellee was not lawfully on the ballot at the general election in November, 1925, and received no lawful votes in that election.

But neither was appellant lawfully on that ballot. Section 1453 of the statutes requires that, for the office to which appellant aspired, a nominating petition must be signed by not less than 100 electors qualified to vote for such candidate. This same section also provides: "The signatures of such petition need not be appended to one paper, but no petitioner shall be counted except his residence and post office address be designated." Appellant's nominating petition purported to be signed by 115 such electors. Of this number no residence or post office address was designated for the names of John Muncy, C. Merritt Pace, Geo. Morgan-Viney, James C. Hoskins or Mallie Brewer. In the case of Skidmore v. Hurst, 113 Ky. 694, 68 S. W. 814, involving the question whether or not Hurst was lawfully on the ballot under a nominating petition, this court said:

"The petition filed by Hurst with the clerk had to it only 78 names where the residence and postoffice address of the petitioner were designated. The other 24 names were written one after the other without any designation of the post office address. The statute is peremptory, and under it the petition presented by Hurst was insufficient, as it was not signed by 100 petitioners who could be counted."

In the later case of Blackburn v. Welch, 138 Ky. 267, 127 S. W. 991, the office of police judge of the city of Stanton, then a town of the sixth class, was at stake. It was contended that the nominating petition of the successful candidate was fatally defective, in that it did not give the post office address of some of the signers. The nominating petition, however, at its head stated that its signers were citizens of the town and qualified to vote therein, and to this heading, the signers had subscribed their names. The answer of the contestee set out his nominating petition and averred that all its signers were citizens and legal voters of the town of Stanton, which was their post office address, which fact was known to the county clerk at the time that petition was filed with him. The case went off on a demurrer to that answer. This court, after pointing out that the demurrer admitted the

facts pleaded in the answer, held that the nominating petition, while not as full as it should have been, still was sufficient when considered in the light of the information which the county clerk had, as admitted by the demurrer.

In this Blackburn case, a municipal office of the city of Stanton, the county seat of Powell county, was involved. The town was a sixth class city and so necessarily small in extent. The heading of the nominating petition recited that its subscribers were citizens of that town. Only 20 were needed. Under such circumstances, it was not an unwarranted presumption to say that the county clerk, whose office was located in that town, would be presumed to know whether or not the signers of the petition were residents of that city. Moreover, the demurrer to the answer admitted that very fact. But in the case before us, the office involved is a county office. Leslie county is a large one. The heading of the nominating petition did not recite that the subscribers were citizens or residents of Leslie county, but only that they were "legal voters" therein, a palpable conclusion on their part. There is no averment that the county clerk had any information concerning the residence or post office address of any of the signers other than that furnished him by the nominating petition itself. The answer specifically put in issue the qualifications of the signers of appellant's petition and appellant took no proof to show that those signers, whose names had no post office or residence address appended to them, were residents of Leslie county or qualified to vote for appellant, or that the county clerk who received the nominating petition knew any of these facts.

Although the Skidmore case held that the statute is peremptory, the Blackburn case held that, if the nominating petition taken in connection with the information it is satisfactorily shown the county clerk has about the residence and post office address of the signers, substantially meets the requirements of the statute, it will not be held bad. In the case before us, however, it is not shown that the county clerk had any information about the signers whatever. The nominating petition nowhere supplies that lack. The case is therefore governed by the general rule of the Skidmore case, and is not saved by the exception of the Blackburn case.

It therefore results that the five names above set out must be deducted from the 115 names appearing on appellant's nominating petition. Of the remaining 110 names,

the proof shows without contradiction that those of Bill Sizemore, Ella Begley, Lizzie Hoskins, Green Napier, Mollie Earl, Luther Sizemore, Vina Sizemore, Bradley Sizemore, Jim Sizemore, Little Bill Sizemore and Ester Morgan, were not signed by those parties nor by any one else for them by their authority or direction or consent. These 11 names must, therefore, be deducted from the 110 left after the deduction of the five which had no post office or residence address designated for them. This leaves only 99 names on the petition. So far as the name of John Sizemore is concerned, the proof shows that there are two John Sizemores living in the same precinct and who were distinguished from each other by the respective nicknames of "Coldfoot" and "Blacksnake." It was only shown that one of these had not signed the petition and we cannot say that the name appearing on the petition was not that of the other and that he had not signed it. The proof as to the names of Cad Collins and Rachel Couch not signing is neither satisfactory nor competent. However, we have seen that appellant had but 99 lawful names to his petition. In view of this, we do not undertake to decide whether or not the designation of the post office address and residence of these petitioners satisfied the statute, inasmuch as a deciding of that question is not ncessary for the decision of this case. As appellant did not file the required nominating petition to get on the ballot he is in the same position as the appellee, and not being lawfully on the ballot, received no votes.

Appellee says that, if it be true, then appellant is without power to contest appellee's election, no matter whether appellee was lawfully on the ballot or not, and he cites in support of this position the case of Toney v. Harris, 85 Ky. 453, 3 S. W. 614, and Howes v. Perry, 92 Ky. 260, 17 S. W. 575. Neither of these cases is in point. The Toney v. Harris case was not an election contest but an action brought under section 483 of the Civil Code to oust an alleged usurper from office, in which character of case it is essential that the plaintiff show himself to be entitled to the office in question. Neither was the Howes v. Perry case an election contest. There one of the candidates for office of county court clerk died about three o'clock on the day of the election, leaving Howes as the only candidate or person to be thereafter voted for Inasmuch as the deceased candidate received on the face of the returns more votes than did Howes, the county board of election commissioners refused to award Howes

a certificate of election. The county judge of Johnson county then declared the office of county clerk vacant and appointed Perry to fill the vacancy. Appellant then brought suit to recover the office. It is obvious that this case is then of the same character as Toney v. Harris, *supra*. The case before us, however, is a contested election case. In Whitney v. Skinner, 194 Ky. 804, 241 S. W. 350, the office of city prosecuting attorney of the city of Hopkinsville was in issue. At that time Hopkinsville was under the commission form of government, and it was held that no one could be voted for in the November general election for the office involved unless he had been nominated in the preceding primary election prescribed for cities enjoying the commission form of government. Whitney had not been nominated in such primary but he had been voted for in the general election by voters writing his name on the ballot. In the contest proceedings it was held that none of these votes could be counted for Whitney and that therefore he received no lawful votes. Nevertheless we held: "One who by a contested election seeks to have himself adjudged elected to an office must show his own election to the office. The fact that his adversary was not elected will not dispense with the necessity of proving his own election to make a recovery, and although he is not able to prove his own election, he may show that his adversary was not elected. Francis v. Sturgill, 163 Ky. 650, 174 S. W. 753." In McKinney v. Baker, 180 Ky. 526, 203 S. W. 303, we held that although a candidate was himself incapable of taking office, he might contest the election of his opponent because of the ineligibility of the latter arising out of a violation of our Corrupt Practice Act, and in Hardin v. Horn, 184 Ky. 548, 212 S. W. 573, the same principle as in the McKinney v. Barker case was applied. See also Scholl v. Bell, 125 Ky. 750, 102 S. W. 248.

From these cases it results, therefore, that, although the appellant could not be declared elected to the office of county judge, as he asked in his petition, since he could not show or establish his right to that office, yet he did have the right to contest the election of the appellee. As neither appellant nor appellee received any lawful votes for the office to which they aspired, it follows that there was no election; that neither appellant nor appellee is entitled to a certificate of election or the office involved; and that a vacancy exists which must be filled according to law. The judgment of the lower court is therefore re-

versed, with instructions to enter a judgment declaring that neither appellant nor appellee was elected to the office of county judge and that a vacancy exists in that office, to be filled according to law.