### Hart v. Rose.

(Decided Oct. 5, 1934.)

H. H. OWENS for appellant.

J. LEONARD DAVIS for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER— Affirming.

Walter Hart, having been adjudged not entitled to hold the office of subdistrict trustee in Hart school subdistrict No. 71 in Knox county, has appealed.

More than 15 days before July 14, 1934, Walter Hart filed with the superintendent of schools of Knox county a written notice of his intention to become a candidate for this office. The appellee, B. C. Rose, filed a timely and similar notice, and pursuant to section 4399-8, Ky. Stats. Supp. 1934, the names of these two men were printed on the official ballots used at the election held on July 14, 1934, and when the votes were counted on July 16, 1934, it was found Hart had received 108 votes and Rose 93. Whereupon a certificate of election was issued to Hart, and upon July 21, 1934, Hart took the oath of office as such trustee.

On Wednesday August 8, 1934 (within the 30 days

provided by section 1596a-12, Ky. Stats. Supp. 1933), Rose filed in the Knox circuit court a petition contesting the election of Hart because and on the ground that Hart had failed on the fifteenth day before July 14, 1934, to file with the officer, with whom he filed his declaration of intention to become a candidate for said office, a written statement signed and sworn to by him setting forth and containing in detail all sums of money, etc., contributed, disbursed, expended, or promised by him, etc., as required by section 1565b-4, Ky. Stats.; in other words, that he had failed to file his pre-election expense account as required by that section.

To this Hart on the same day filed his answer and counterclaim, in which he frankly admitted he had not previously filed such pre-election expense account, not because of any purpose to violate or evade the law, but inadvertently, and in ignorance of the necessity therefor, which necessity he raised and questioned by his pleading, and as a counterclaim against Rose he charged him with a like dereliction, because of which he questioned the right of Rose to maintain this contest.

With his answer and counterclaim, and as a matter of precaution, Hart on August 8, 1934, prepared and filed a copy of his pre-election expense account which he had that day filed with the proper officer, and with which account no one was able to find any fault except it had not been filed in time. As these parties by their pleadings had raised no issue of fact, the questions of law, which were raised by demurrer, were disposed of adversely to Hart, the court adjudged Hart was not entitled to the office because he had violated section 1565b-4, that Rose was not entitled to the office for the same reason and for the additional reason that he had received fewer votes than Hart, and that hence there had been no election and the office was declared vacant. Hart has appealed, and we shall now state and dispose of the questions he has presented.

### Rose as a Contestant.

Since Rose admits he himself had failed to file a pre-election expense account, and received fewer votes than Hart, and therefore cannot be awarded the office, Hart questions the right of Rose to maintain this contest, but we have repeatedly decided this question adversely to that contention. Scholl v. Bell, 125 Ky. 750,

102 S. W. 248, 31 Ky. Law Rep. 335; McKinney v. Barker, 180 Ky. 526, 203 S. W. 303, L. R. A. 1918E, 581; Hardin v. Horn, 184 Ky. 548, 212 S. W. 573; Combs v. Dixon, 215 Ky. 566, 286 S. W. 797.

Hart cites Morgan v. Adams, 250 Ky. 441, 63 S. W. (2d) 479, and Pratt v. Adams, 251 Ky. 381, 65 S. W. (2d) 91, in support of his contention that Rose cannot maintain this contest.

Those two cases grew out of an election of three trustees in school district No. 3 of Letcher county, held July 30, 1932, at which election Melvin Adams received 79 votes, Byrd Adams 77 votes, and Arch Adams 76 votes.

C. C. Morgan, who had received but 65 votes, sought to contest the election of Melvin Adams and Byrd Adams, because they had not the statutory qualifications to hold the office of trustee, since they were as he alleged unable to read and write a legible hand.

John C. Adams, who had received but 70 votes, sought to contest the election of Melvin Adams and Byrd Adams upon the same grounds. Both were unsuccessful, and they appealed. Both judgments were affirmed.

There is a well-recognized distinction between a contest of a citizen's right to an office because of his alleged ineligibility and a contest involving alleged irregularity in his election.

Formerly a contestant could raise both the eligibility of his adversary and the regularity of his election in the same proceeding, for the provision of the statute was:

"Where the person returned is found not to have been legally qualified to receive the office at the time of his election, a new election shall be ordered."
See subsection 8, sec. 1, art. 7, c. 32, Rev. St. 1852; subsection 8, sec. 1, art. 7, c. 33, Gen. St. 1883, and subsection 8, sec. 1531, of Ky. St. (1899); the language of section 1531, Ky. St., being somewhat, but not materially, different from the earlier statutes.

By an act approved October 24, 1900 (see chapter 5, p. 27, of the extraordinary session begun August 28, 1900), the election laws were amended, and in section

12 of that act as amended by Acts 1930, c. 51, section 1596a-12, Ky. Stats. Supp. 1933, it was provided:

"In case it shall appear from an inspection of the whole record that there has been such fraud, intimidation, bribery or violence in the conduct of the election that neither contestant nor contestee can be adjudged to have been fairly elected, the circuit court, subject to revision by appeal, or the court of appeals finally may adjudge that there has been no election. In such event the office shall be deemed vacant, with the same legal effect as if the person elected had refused to qualify."

In Wilson v. Tye, 122 Ky. 508, 92 S. W. 295, 297, 29 Ky. Law Rep. 71, that amendment was before the court, and we said of it:

"In our opinion when the General Assembly enacted this statute, in lieu of the former statute, with reference to the trial of contested elections, it was intended to relegate the question of eligibility or legal qualifications for the office to a different or other mode of procedure. Consequently the lower court was without power in this action to pass upon the eligibility of the contestee to the office in contest."

In Wilson v. Tye, 126 Ky. 34, 102 S. W. 856, 858, 31 Ky. Law Rep. 491, that question was before us again, and we said:

"If appellee was ineligible for the office of county superintendent at the time of her election, or when she qualified, or she is now wrongfully in possession of the office, the commonwealth's attorney of the judicial district in which Whitley county is situated may maintain an action to deprive her of it."

Thus the court clearly held that, in an election contest, a contestant could not raise the question of the contestee's not having the constitutional or statutory qualifications to hold the office, and to that ruling we have since adhered. See Whitney v. Skinner, 194 Ky. 804, 241 S. W. 350; Francis v. Sturgill, 163 Ky. 650, 174 S. W. 753; Potter v. Campbell, 159 Ky. 328, 167 S. W. 404; Nichols v. Pennington (Ky.) 118 S. W. 382; Dorian v. Walters (Ky.) 116 S. W. 312.

Now going back to the two cases relied on, we find Pratt v. Adams, 251 Ky. 381, 65 S. W. (2d) 91, simply

followed Morgan v. Adams, 250 Ky. 441, 63 S. W. (2d) 479, 480, and that case followed Wilson v. Tye, 126 Ky. 34, 102 S. W. 856, 31 Ky. Law Rep. 491, and held there were but three men who could sue to oust one who did not possess the statutory or constitutional qualifications to hold an office, to wit, the Attorney General, the commonwealth's attorney, and a person who may be able to show he is entitled to the office. While Hart cites this case in support of his insistence that Rose could not maintain this contest, we are unable to see how he can find any comfort in it, for in the opinion it is clearly said:

"Since the plaintiff's petition disclosed that he had not received a plurality of the legal votes cast, it follows that he was not entitled to the office, and therefore could not maintain an action to oust the alleged usurpers."

Hart is not an usurper; he appears to have every qualification to fill this office. Contestant Rose has never alleged Hart was not in every way qualified to fill the office, but he is attacking his right to do so because Hart had failed at any time before the election to file his pre-election expense account, which failure renders Hart's election void. See section 1565b-11, Ky. Stats. Rose, as contestant, is challenging Hart's manner of acquiring the office as distinguished from Hart's constitutional and statutory qualifications to fill the office; hence it follows Rose may maintain this contest, although Rose cannot show he was himself entitled to the office.

### Corrupt Practice in School Elections.

Hart contends the Corrupt Practice Act (Ky. Stats. sec. 1565b-1 et seq.) does not apply to school elections, but our decisions are adverse to his contention. See Noble v. Bowman, 249 Ky. 343, 60 S. W. (2d) 948; Ridings v. Jones, 213 Ky. 810, 281 S. W. 999.

In the case last cited this question is carefully considered and fully answered.

### School Elections and Section 155, Ky. Constitution.

Hart contends that section 155 of our Constitution forbids the Legislature to apply the Corrupt Practice Act to school elections, but he is in error about that.

The Constitution, by sections 145 to 154, inclusive, deals with elections, and section 151 requires the Legis-

lature to provide means to deprive a person of an office, who had procured it by improper means, and to carry out that provision our Corrupt Practice Act was passed. Section 155 of the Constitution merely relieves the Legislature of the necessity of making such a measure applicable to schools. But the Legislature is a sovereign body, and, unless forbidden by some provision of our state Constitution or the Federal Constitution, or federal laws or treaties, it can do whatsoever it will, and hence it had authority to make the Corrupt Practice Act applicable to schools, and we have held in the two cases cited above that it did so, and we are now so holding in this one, for not only have we for our guidance the two cases cited above, but those cases were on the books when the Legislature on March 14, 1934, passed chapter 65 of the Acts of 1934, and it tacitly approved our holding by failing to provide otherwise and actively approved them, by providing in section 4399-25 (Ky. Stats. Supp. 1934):

"The general election laws of the Commonwealth of Kentucky shall apply in all school elections as set out in this act."

### Calamitous Consequences.

Hart says that in few, if any, of the vast number of subdistrict elections did the candidates file pre-election expense accounts, and that the affirmance of this judgment will result in the utmost confusion, and he cites the case of Gosney v. Butler Graded School, 219 Ky. 242, 292 S. W. 781, as reason for the reversal of this judgment. He may not be correct in his statements regarding the alleged general disregard of the law, but, if he were, the time for filing contests is past, and we cannot see such resulting confusion as he contemplates. Some confusion results each time a change is made in the law, but that does not authorize us to undo what the Legislature has done.

The court did not err in holding neither of these men entitled to this office and that the office is vacant.

Judgment affirmed.