**Rebecca Ann BROCKMAN (Formerly Craig), Appellant,**

v.

**Clarence Kevin CRAIG, Appellee.**

**No. 2005–CA–001347–ME.**

Court of Appeals of Kentucky.

July 14, 2006.

Discretionary Review Denied by Supreme Court Nov. 15, 2006.

---

Allen McKee Dodd, Dodd & Dodd Attorneys, PLLC, Louisville, KY, for appellant.

Ruth H. Baxter, Crawford & Baxter, P.S.C., Carrollton, KY, for appellee.

Before McANULTY[1] and SCHRODER, Judges; ROSENBLUM, Senior Judge.[2]

1. This opinion was completed and concurred in prior to Judge William E. McAnulty, Jr.'s resignation effective July 5, 2006, to accept appointment to the Kentucky Supreme Court. Release of the opinion was delayed by administrative handling.

2. Senior Judge Paul W. Rosenblum sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and KRS 21.580.

## OPINION

McANULTY, Judge.

This case is before this Court on the motion of Rebecca Brockman (formerly Craig) (hereinafter Rebecca) in the Carroll Circuit Court to be allowed to move to Indiana with her minor child. Rebecca shares joint custody of the child with her ex-husband, Clarence Kevin Craig (hereinafter Kevin). She argues that the standard for modification of visitation, rather than modification of custody, should have been used to determine the merits of the motion. She further believes that the trial court erred in determining that she was not the primary residential custodian, and that neither party was designated as such, since she was in reality the primary caretaker of their child. She believes that the court should have held a hearing on her motion. We have reviewed the record, and we affirm.

The marriage of Rebecca and Kevin Craig was dissolved in April 2004. At that time, the parties entered into a property settlement agreement, subsequently held to be binding by the Carroll Circuit Court, which stated with respect to child custody:

> Both parties are the fit and proper persons to have the care, custody and control of the parties' minor child, Clarence Case Craig, and shall share joint custody of their son. The parties shall confer and attempt to agree upon all major decisions affecting their son, including but not limited to, his education, religion, and health care.

The separation agreement further set forth a "parenting schedule" for their son, in which Rebecca had the child approximately three days during the workweek to Kevin's two days, and weekends with their son were alternated. It stated each parent was entitled to an equal amount of vacation time per calendar year, and allotted to each half of holidays. Kevin was ordered to pay to Rebecca child support. Kevin was responsible for obtaining health insurance for the child, but health care expenses were to be divided by the parties. Tax deductions and exemptions were to be alternated by the parties.

The controversy in this case arose less than a year after the property settlement agreement was finalized. On March 14, 2005, Kevin filed a "Motion to Prevent Petitioner [Rebecca] from Removing the Parties' Child from Carroll County." Kevin stated that he had received a letter that day from Rebecca in which she expressed her intention to move to Vevay, Indiana. Kevin attached an affidavit and the letter received from Rebecca, dated March 4, 2005. In the letter, she stated that they needed to discuss how to exchange the child for visitation, and asserted that she wanted to enroll the child in school in Rising Sun, Indiana, where she would be working as a substitute teacher. Kevin objected to removal of the child from school in Carroll County and to the proposed relocation to Indiana, or anywhere outside of Carroll County. He alleged that the proposed move would violate the terms of the joint custody agreement.

Following Kevin's motion, Rebecca filed a "Motion to Relocate and to Modify the Parenting Schedule." Rebecca attached an affidavit in support which stated that she had remarried and would be moving into her husband's house in Vevay, Indiana. She reported that his house was located approximately 45 minutes from Carroll County. She stated that her two new jobs in Indiana would provide income approximately three times her previous income. She stated that she had been volunteering at their child's school in Carroll County, but would be able to be paid as a substitute teacher in Indiana while working towards her teaching certificate. In

addition, she had obtained a job as a real estate agent. Lastly, Rebecca asserted that she had "always been the primary caretaker" of their son, that their agreement presently gave her more parenting time, and that allowing the child to relocate with her was in his best interest since he would attend the same school where she worked. She proposed that Kevin be given more parenting time in the summer to make up for time lost during the school week when the child resided with her.

Kevin responded that her motion to relocate was in effect a motion to modify custody in that it sought a change in the parties' joint custody arrangement. He objected to Rebecca's request for a hearing on her motion on the basis that she had not alleged pursuant to KRS 403.340(2) that there were sufficient grounds to modify custody within two years of the custody decree. KRS 403.340(2) provides:

No motion to modify a custody decree shall be made earlier than two (2) years after its date, unless the court permits it to be made on the basis of affidavits that there is reason to believe that:

(a) The child's present environment may endanger seriously his physical, mental, moral, or emotional health; or

(b) The custodian appointed under the prior decree has placed the child with a de facto custodian.

Kevin noted that it had been about eight months since the approval of the joint custody arrangement by the court, and a single affidavit was filed with the motion.

In memoranda, the parties argued over the application to these circumstances of *Fenwick v. Fenwick*, 114 S.W.3d 767 (Ky. 2003), which held that a parent with primary residential custody in a joint custody arrangement had a right to relocate with the child without court approval despite the objection of the other parent. *Fen-*

*wick* declared that the objecting parent could only prevent relocation by being named primary residential custodian, which would require modification of custody under the standard of KRS 403.340(2). *Id.* at 785–786, & n. 84. Rebecca argued that she was the primary custodian, so that modification of custody was not needed, but a change in the visitation schedule was required using a best interests of the child standard. Kevin asserted that Rebecca was not the child's "residential custodian," as neither party was so designated in their parenting agreement.

The case was assigned to a Domestic Relations Commissioner, who found:

There was no designation of either party as the child's "primary residential custodian' in the parties" joint custody agreement, and in this case the omission of that designation was by design of the parties' attorneys, and not by omission, as counsel for the parties struggled in this Court to achieve a settlement of the custody and parenting of the parties' son so that the parties would have shared parenting and could settle this issue without further hearing by the Court. The parties and their counsel attempted to reach a true joint custody shared parenting arrangement[.]

The Commissioner concluded there was no right to relocate, as in *Fenwick*, on the basis that no primary residential custodian was designated in the case at bar. The Commissioner stated that in order to relocate and alter the joint custody agreement, Rebecca would be required to meet the burden of proving the requirements of the statute on modification of custody. Based on the finding, the Commissioner recommended granting Kevin's motion and maintaining the status quo, including continued enrollment in Carroll County schools.

The parties filed exceptions to the report of the Commissioner. A second report was filed by the Commissioner on May 25, 2005, which again stated that there was no primary guardian designated in the parties' agreement. The Commissioner stated that the fact that the mother spent more hours with the child during the week did not confer the designation of primary custodian on her. As for Rebecca's argument that she was only seeking to change the amount of parenting time, the Commissioner found that her motion not only affected parenting schedules, but proposed to change the child's school and substantially reduce the amount of time the father spent with the child. Thus, it must be treated as a motion to modify custody.

■ The Commissioner then applied KRS 403.340 and considered Rebecca's affidavits in support of the motion. He found that she had not met the standard of showing serious endangerment to the child. Instead, her allegations amounted to arguments that the move was in the best interest of the child. The Commissioner thus concluded there was no basis for a hearing on the motion, and recommended that the motion for modification be denied. That same day, the Carroll Circuit Court ordered that the motion for modification of custody did not meet the requirements for the court to hold a hearing under KRS 403.340, and denied the motion. Rebecca appeals this order.

■ In *Fenwick*, the Supreme Court reported that: "in joint custody arrangements, the parties will often agree, or the court will designate, that one of the parents will act as the 'primary residential custodian.'" *Fenwick*, 114 S.W.3d at 778–779. Even so, it is possible to proceed with joint custody with no primary residential custodian designated. The status of primary residential custodian must be designated by the court or by agreement of the parties, or it has no basis in fact in a custody arrangement. As stated by the Supreme Court in *Fenwick*, it does not arise by statute, but is created by the court or the parties to confer particular responsibilities on one of the parents. *Id.* at 779. It is thus not the same as determining who had been the primary caretaker before separation. Nor is it settled by asking who has the child for more hours after dissolution. Rebecca cannot show, therefore, that she was the primary residential custodian, since the plain language of the separation agreement as to child custody does not designate a primary custodian.

■ In *Crossfield v. Crossfield*, 155 S.W.3d 743 (Ky.App.2005), this Court considered which standard should be used, modification of custody or modification of visitation, when the issue is a change in the primary custodian. We agree with its conclusion that a "change in the primary residential custodian amounts to a modification of the joint custody arrangement." *Id.* at 746.

Rebecca maintains that she was only seeking to modify parenting time, and so the trial court erred in requiring her to meet the standard for modification of custody. Rebecca further argues that *Crossfield* is distinguishable from the case at bar on its facts. The father in *Crossfield* had been named primary custodian, and the mother was seeking to become primary custodian and reverse their time-sharing arrangement. Rebecca argues this case is completely different in that she had the majority of parenting time before the motion to relocate, and would continue to have the majority of time, but her time with the child would increase. Apart from the fact that this downplays the changes she seeks, we find that the factual distinction makes no difference in directing the

applicable law in this instance. The basis for the ruling in *Crossfield* was not the amount of time spent, but what the effect would be of changing the assignment of primary residential custodian status. *See Crossfield,* 155 S.W.3d at 746. ("Under the new arrangement, Keni would assume the primary role in the minor day-to-day decisions concerning the children, would be primarily responsible for providing a residence for the children, and would assume their normal routine care and control.") Thus, we conclude the trial court correctly determined that the standard for modification of custody applied.

With no primary residential custodian designated, Rebecca had to obtain a modification of custody in order to relocate with the child. Because it was less than two years since the custody agreement was made it was necessary under KRS 403.340(2)(a) to show a reason to believe the child's present environment seriously endangered him in order to justify a modification. Rebecca did not allege or show this. Her affidavit stated only that allowing their child to relocate with her was "in his best interest." A second affidavit she later filed, from her father, observed only that the child was very close to his mother and would "suffer serious emotional harm" if he did not primarily reside with her. The Commissioner determined that neither of the affidavits came near to meeting the standard in the statute. We agree that there was no basis for modification of custody within two years under KRS 403.340(2)(a).

Rebecca further argues that due process required that she be granted a hearing on her motion. We disagree. The statute provides threshold requirements for modifying custody which must be alleged by way of affidavits. The statute is clear that it gives discretion to the court to "permit" the motion based on the affidavits. Since the statute affords the trial court discretion not to permit the motion, it follows that the court may deny a hearing on the motion. Therefore, we find no error in the court's failure to hold a hearing.

For the foregoing reasons, we affirm the order of the court denying a hearing on the motion to modify.

ALL CONCUR.