Saeid SHAFIZADEH, Appellant

v.

Denise O. SHAFIZADEH, Appellee.

Nos. 2010–CA–000758–MR, 2010–CA–002125–MR, 2011–CA–000825–MR.

Court of Appeals of Kentucky.

Dec. 14, 2012.

Rehearing Denied July 3, 2014.

438

Saeid Shafizadeh, Louisville, KY, pro se appellant.

Susan M. Meschler, Shelbyville, KY, Michelle Chalmers–Thompson, Louisville, KY, for appellee.

Before ACREE, Chief Judge; CLAYTON and KELLER, Judges.

## OPINION

ACREE, Chief Judge:

Saeid Shafizadeh, *pro se*, appeals numerous orders of the Jefferson Family Court. In the first appeal, Saeid takes issue with the family court's February 3, 2010 Findings of Fact, Conclusions of Law, and Order dividing marital property, establishing maintenance and child support, and awarding appellee Denise Shafizadeh (now Dugas) attorney's fees. In his second appeal, Saeid contends the circuit court erred by granting Denise's motion to relocate and modify the parties' parenting schedule, denying his motion to modify custody, and denying his motion to discharge an order of garnishment. Finally, in the third appeal, Saeid asserts the circuit court erred in denying his motion to discharge a second garnishment order, and erred in denying his request for relief pursuant to Kentucky Rules of Civil Procedure (CR) 60.02. We have consolidated these appeals in the interest of judicial economy. For the following reasons, we affirm in part, reverse in part, and remand for additional proceedings consistent with this opinion.

## I. *Facts and Procedure*

Saeid and Denise married on January 27, 1982, in Henderson, Louisiana. The couple separated on December 27, 2006; on February 7, 2007, Denise filed a dissolution petition in Jefferson Family Court. At that time, Saeid and Denise had two adult children and two minor children:

A.B.S., born May 5, 2002; and D.J.S., born January 25, 2005.

Denise holds a bachelor's degree in business management. Between 1998 and 2005, Denise was employed as an Operations Manager at BB & T Bank earning $28,000 per year. In 2005, Denise left her employment to assume full-time care of the parties' minor children.

Saeid is a businessman and a licensed Kentucky attorney; Saeid holds several degrees. During the marriage, Saeid incorporated three business entities: Pars International Corporation, Cheyenne Properties Corporation,[1] and The Law Firm, PLLC. Saeid is the sole shareholder in Pars International and The Law Firm; Saeid and Denise were each 50% shareholders in Cheyenne Properties. Saeid derived his income solely from these business ventures and, in 2007, Saeid's gross salary was $40,000: $30,000 from Pars International, and $10,000 from The Law Firm.

On April 10, 2008, Saeid and Denise entered into a property settlement agreement which was subsequently adopted by the family court. Under its terms, the values of the certain assets, though not all marital assets, were stipulated as follows: the marital residence: $235,000 (unencumbered); Pars International: $275,000; Cheyenne Properties: $405,000; and The Law Firm: $0. The parties agreed Denise was entitled to 48% ($439,200) and Saeid was entitled to 52% ($475,800) of these assets. To advance a straightforward division of these assets, Denise received the marital residence, and Saeid agreed to pay Denise the sum of $204,200 as a cash settlement, thereby equalizing the division of property.

Thereafter, on June 24, 2008, Saeid and Denise entered into an agreed order regarding custody, which was subsequently incorporated into their decree of dissolution. Under its terms, Saeid and Denise agreed to joint custody of A.B.S. and D.J.S. without designating a primary residential parent. The agreement also set forth a detailed parenting and holiday schedule.

The family court entered the decree of dissolution on July 24, 2008.

On December 18, 2008, a trial was held on the issues of child support, maintenance, and division of the remaining marital property. There were several contested property issues. Saeid and Denise owned four vehicles, two motorcycles, and seven shares of stock. Both parties had individual retirement and bank accounts. The parties also had $122,500 in cash (previously held in a joint bank account), and $27,500 in an "emergency" fund.

On February 3, 2010, the family court entered its Findings of Fact, Conclusions of Law, and Order. The family court awarded Saeid three vehicles, the stock, and the motorcycles, and awarded Denise the remaining vehicle. Saeid received $55,931 of the $122,500 held in the joint bank account, and $25,513 of the $27,500 emergency fund; Denise received $66,659.00 from the joint bank account, and $1,987.00 of the emergency fund.[2]

---

1. Pars International is in the business of importing firearms, and Cheyenne Property is in the business of renting real estate. According to Saeid, the only asset owned by Cheyenne is the real property from which Pars is operated.

2. Prior to trial, Denise admittedly removed the $122,500 from the parties' joint bank account. However, on March 12, 2007, Denise returned approximately $55,931.00 of the $122,500 to Saeid. Accordingly, in dividing the marital assets, the family court awarded each party the portion of the $122,500 marital funds already in his or her possession and, after dividing the remaining assets, used the $25,000 emergency fund to achieve an equita-

Each party received his or her respective retirement and bank accounts. In sum, Saeid and Denise each received $90,301.00 in marital assets.[3]

The family court also restored to Denise two nonmarital assets: (1) an interest in an oil and gas lease inherited by Denise following the death of her father; and (2) a pain and suffering judgment from a personal injury lawsuit. Denise assumed responsibility for $2,043 in credit card debt, and the family court assigned Saeid the remaining debt which consisted of $101 on a BB & T Visa credit card.[4]

The family court further awarded Denise "open ended" maintenance in the amount of $750 per month, and attorney's fees in the amount of $6,412. Finally, with respect to child support, the family court concluded Saeid was capable of earning more money and, as a result, was voluntarily underemployed. The family court imputed earnings to Saeid at $60,000 per year, and awarded Denise $859.00 per month in child support.

The family court denied Saeid's motion for post-judgment relief. Saeid timely appealed.

As additional facts become relevant, they will be discussed.

## II. *February 3, 2010 Order and Related Issues*

### A. *Jurisdiction*

■ On December 21, 2009, before the family court entered its Findings of Fact, Conclusions of Law, and Order on February 3, 2010, Saeid filed a petition with the Chief Justice of the Kentucky Supreme Court, pursuant to Kentucky Revised Statutes (KRS) 26A.020, seeking to disqualify the family judge. The Chief Justice denied Saeid's petition on March 12, 2010, finding it failed to demonstrate any disqualifying circumstance or event.

Nonetheless, Saeid contends the family court lacked authority to enter its February 3, 2010 order because Saeid's pending petition for disqualification divested the family court of jurisdiction. Whether the family court acted outside its jurisdiction is a question of law. *Biggs v. Biggs*, 301 S.W.3d 32, 33 (Ky.App.2009). We review the issue *de novo. Id.*

■ "[A] party or counsel may seek to disqualify or recuse a judge from proceeding further in a matter either by filing an affidavit pursuant to KRS 26A.020, by filing a motion with the judge pursuant to KRS 26A.015, or by filing both." *Kenney v. Hanger Prosthetics & Orthotics, Inc.*, 269 S.W.3d 866, 876 (Ky.App.2008). KRS 26A.020(1) provides, in pertinent part, that:

> If either party files with the circuit clerk his affidavit that the judge will not afford him a fair and impartial trial ... the circuit clerk shall at once certify the facts to the Chief Justice who shall immediately review the facts and determine whether to designate a regular or retired justice or judge of the Court of Justice as special judge.

Construing KRS 26A.020(1), our Supreme Court has explained: "The circuit judge does not have a hearing on the affidavit to disqualify. If it is sufficient on its face he

---

ble division of all the remaining marital assets.

**3.** This does not include the value of furniture, furnishings, appliances, and household items; the family court directed Denise and Saeid to equally divide these assets.

**4.** The family court also assigned Saeid a BB & T line of credit; however, at the time of trial, this debt had a $0 balance.

has no alternative but to step aside or to stay proceedings pending determination of the challenge." *Jackson v. Commonwealth*, 806 S.W.2d 643, 645 (Ky.1991). In *Diaz v. Barker*, 254 S.W.3d 835 (Ky.App. 2008), this Court reiterated that "under the recusal remedy set out in KRS 26A.020(1), the trial judge is not to make the recusal determination and the case is to be held in abeyance pending the Chief Justice's determination." *Id.* at 838; *Jackson*, 806 S.W.2d at 645 (explaining the trial court "is without further jurisdiction to proceed in the matter until the Chief Justice acts or until a special judge is designated").

Saeid relies on *Jackson* and *Diaz* in making his argument that because the family court entered its February 3, 2010 order while his December 21, 2009 disqualification petition was pending before the Chief Justice, the family court lacked jurisdiction to enter its order. As a result, Saeid maintains, the family court's February 3, 2010 order is void *ab initio*.

We agree that, pursuant to *Jackson* and *Diaz*, the family court's February 3, 2010 order, entered while Saeid's petition for disqualification was pending, was premature. However, we do not think the defect of prematurity extinguishes an otherwise proper order simply because the family court entered it before the Chief Justice ruled on Saeid's petition.

It is, of course, "fundamental that a court must have jurisdiction before it has authority to decide a case." *Wilson v. Russell*, 162 S.W.3d 911, 913 (Ky.2005). However, in *Hisle v. Lexington–Fayette Urban County Government*, 258 S.W.3d 422 (Ky.App.2008), this court discussed the interplay between jurisdiction and the effect of an order or judgment entered absent jurisdiction.

The court first distinguished the various categories of jurisdiction, *i.e.*, personal jurisdiction, subject matter jurisdiction, and particular case jurisdiction. *Id.* at 429. With respect to the latter two, the court explained subject matter jurisdiction refers to the trial court's "authority over … [a] general type of controversy," *i.e.*, the ability to hear "this type" of case, "whereas[ ] particular case jurisdiction focuses on a more limited or narrow fact-specific situation." *Id.* at 429, 434; *Commonwealth v. Griffin*, 942 S.W.2d 289, 291 (Ky.1997). Succinctly put, "subject matter jurisdiction refers to a court's authority over 'this *kind* of case' as opposed to 'this [specific] case.' " *Hisle*, 258 S.W.3d at 429 (citing *Duncan v. O'Nan*, 451 S.W.2d 626, 631 (Ky.1970)). "Particular case jurisdiction is a subset of subject matter jurisdiction in that 'a court that lacks subject-matter jurisdiction over an action will also always lack particular-case jurisdiction, [but] a court can have proper subject-matter jurisdiction over an action, but nonetheless lack particular case jurisdiction.' " *Hisle*, 258 S.W.3d at 429–30 (citation omitted). In keeping with this reasoning, we think the filing of a KRS 26A.020 disqualification petition deprives the family court not of subject matter jurisdiction, but of particular case jurisdiction.

In the case before us, it is undisputed that the family court had subject matter jurisdiction to decide "this kind of" case, namely, a dissolution action with disputed issues pertaining to maintenance, child support, and property division. KRS 23A.100 ("[A] family court division of Circuit Court shall retain jurisdiction in the following cases: (a) Dissolution of marriage; (b) Child custody; (c) Visitation; (d) Maintenance and support; [and] (e) Equitable distribution of property in dissolution cases[.]"). Accordingly, Saeid's disqualification petition did not strip the family court of subject matter jurisdiction. Rather, the family court lost jurisdiction

over Saeid and Denise's specific case, *i.e.*, particular case jurisdiction, until the Chief Justice issued his decision. The question then becomes, "what is the legal effect, if any, of an order or judgment entered when the trial court lacks particular case jurisdiction?" *Hisle* explains:

> It is well-established that a judgment entered by a court without subject matter jurisdiction is void.... On the other hand, lack of particular case jurisdiction merely renders a judgment *voidable*, rather than *void ab initio*. In *Dix v. Dix*, 310 Ky. 818, 822, 222 S.W.2d 839, 841 (1949) ... the court commented that "where the court has jurisdiction of the parties and subject matter, the judgment, if erroneous, is voidable, not void."

*Hisle*, 258 S.W.3d at 430–31 (internal citations omitted).

■ Accordingly, pursuant to *Hisle*, failure to have particular case jurisdiction by virtue of a properly submitted disqualification petition, filed pursuant to KRS 26A.020, makes a judgment voidable, but not void *ab initio*, subject to the Chief Justice's ruling on the disqualification petition. Stated differently, a judgment or order entered while a KRS 26A.020 petition is pending lacks finality and, likewise, enforcement of that judgment or order is suspended until the Chief Justice renders his or her decision. If the Chief Justice grants the petition, the judgment or order, previously only voidable, is deemed void, and not *ab initio*, but only upon entry of the Chief Justice's order. On the other hand, if the Chief Justice denies the petition, the judgment or order is afforded full force and effect.

■ Here, the family court's decision to enter its February 3, 2010 order while Saeid's disqualification petition was pending before the Chief Justice was not fatally defective. Instead, KRS 26A.020 suspended the family court's particular case jurisdiction until the Chief Justice ruled on Saeid's disqualification petition. When the Chief Justice denied Saeid's petition, the particular case jurisdictional defect was thereby cured. While the safer and better practice may have been to immediately place this matter in abeyance pending the resolution of Saeid's petition, we note that the Chief Justice found Saeid's original petition wholly without merit.[5] The family court appears to have held the same view of the original petition. The decision to issue its February 3, 2010 order, despite the pendency of the meritless disqualification petition was, at most, harmless error. *See generally Potter v. Campbell*, 159 Ky. 328, 167 S.W. 404, 406 (1914) ("[W]hatever prejudice, if any, was worked in the circuit court by the refusal of the trial judge to vacate the bench may here be remedied."). Even that harmless error was cured when the Chief Justice denied Saeid's petition.

We therefore decline to declare as void the family court's February 3, 2010 order for lack of jurisdiction.

## B. Dissipation of Certain Marital Assets and Request for Findings of Fact

■ Saeid next contends the family court abused its discretion when it failed to make required findings of fact regarding marital assets expended by Denise prior to dissolution of the parties' marriage. Saeid contends the family court, in dividing mari-

---

5. After the family court entered its February 3, 2010 order, Saeid supplemented his original petition to the Chief Justice ("second supplemental petition" filed on February 12, and "third supplemental petition" filed on Febru-

ary 23, 2010). The Chief Justice's March 12, 2010 order stated that "[n]one of the issues raised in the original petition and second supplemental petition bear repeating."

tal assets, failed to consider and issue a specific finding of fact as to the following: (i) $3,000 Denise allegedly spent on Christmas presents; (ii) $6,012 in loans to Denise's relatives; and (iii) payments for household expenses and maintenance by Saeid to Denise prior to the dissolution order.

In response, Denise contends the family court's twenty-five page opinion adequately addressed all relevant issues raised at trial and, even should this Court find otherwise, Saeid failed to exercise his right to have these issues addressed by bringing them to the family court's attention in his CR 59.05 motion to alter, amend, or vacate the family court's February 3, 2010 order.[6]

The family court "has wide discretion in dividing marital property; and we may not disturb the [family] court's rulings on property-division issues unless the [family] court has abused its discretion." *Smith v. Smith*, 235 S.W.3d 1, 6 (Ky.App.2006). In making its property-division determinations, the family court must articulate the relevant and essential facts, and "state separately its conclusions of law thereon." CR 52.01. If the family court misses a "key fact in [its] findings, the litigant must assist the court in its good faith efforts to comply with [CR 52.01] by requesting that specific finding." *Anderson v. Johnson*, 350 S.W.3d 453, 458 (Ky.2011).

Following entry of the family court's February 3, 2010 order, Saeid filed a timely motion pursuant to CR 59.05 to alter, amend, or vacate that order. Saeid also filed a motion pursuant to CR 52.02 for additional findings of fact regarding several issues, including the imputation of income to Saeid, the award of attorney's fees to Denise, whether Denise was voluntarily underemployed, whether Denise received income from the gas lease inherited from her father, and whether Saeid paid for D.J.S.'s school tuition. Saeid did not specifically request, however, additional findings as to several issues first raised before this Court, namely: whether Denise dissipated assets by spending excessive money on Christmas presents and issuing loans to family members, and whether Saeid was entitled to an additional portion of the marital assets to offset pre-dissolution payments for household expenses and maintenance. Therefore, we will not reverse on this basis. CR 52.04; *Eiland v. Ferrell*, 937 S.W.2d 713, 716 (Ky.1997) ("CR 52.04 requires a motion for additional findings of fact when the trial court has failed to make findings on essential issues. Failure to bring such an omission to the attention of the trial court by means of a written request will be fatal to an appeal.").

## C. Maintenance

Saeid also argues the family court abused its discretion by awarding Denise maintenance. Utilizing the factors set forth in KRS 403.200, Saeid asserts, Denise is clearly capable of self-sufficiency. Because of this, Saeid argues, the family court's maintenance award constitutes an abuse of discretion. We disagree.

6. In support of her position on this issue—and all other remaining issues on appeal—Denise frequently cites unpublished opinions from this Court. We remind Denise and her counsel that opinions which are designated "Not To Be Published" shall not be cited or used as authority in any court in this state unless there is no published opinion on point. CR 76.28(4)(c). Several of the unpublished opinions cited by Denise simply refer to the appropriate standard of review, for which there is ample published authority. While the citing of an unpublished opinion "is an improper practice and could result, upon proper motion, in the striking of the offending brief without leave to refile[,]" *Jones v. Commonwealth*, 593 S.W.2d 869, 871 (Ky.App.1979), we choose instead, under the circumstances of this particular case, to disregard these citations.

The decision to award maintenance "has traditionally been delegated to the sound and broad discretion of the trial court[.]" *Barbarine v. Barbarine,* 925 S.W.2d 831, 832 (Ky.App.1996). Only when the family court has "abused its discretion or based its decision on findings of fact that are clearly erroneous" may we disturb the family court's decision. *Powell v. Powell,* 107 S.W.3d 222, 224 (Ky.2003). An abuse of discretion occurs when the family court's decision is "arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Artrip v. Noe,* 311 S.W.3d 229, 232 (Ky.2010).

KRS 403.200 is the controlling statute governing maintenance awards; it requires the family court to engage in a two-step process prior to granting a party maintenance. First, the family court must determine whether the party · seeking maintenance is entitled to it by ascertaining whether that party is able to meet his or her reasonable needs. KRS 403.200(1). Second, if the family court concludes maintenance is warranted, the family court must then establish the amount and duration of the maintenance award by considering several factors set forth in KRS 403.200(2). While, of course, mere lip service is insufficient, the family court is not required to render explicit findings of fact as to each relevant KRS 403.200(2) factor. *McGregor v. McGregor,* 334 S.W.3d 113, 118 (Ky.App.2011).

Turning to the first part of KRS 403.200, the family court must ascertain whether the spouse seeking maintenance:

(a) Lacks sufficient property, including marital property apportioned to him, to provide for his reasonable needs; and

(b) Is unable to support himself through appropriate employment or is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home.

KRS 403.200(1)(a), (b). Both sections of the statute must be satisfied before the family court may award maintenance. *Atwood v. Atwood,* 643 S.W.2d 263, 265 (Ky. App.1982)

■ Here, Saeid contends the family court's finding that Denise lacked sufficient property to provide for her reasonable needs is clearly erroneous because Denise received $529,301 in marital assets, as well as nonmarital assets in the form of a personal injury settlement and an interest in an oil and gas lease. Likewise, Saeid asserts the family court's finding that Denise is unable to support herself through appropriate employment is also clearly erroneous because Denise holds a bachelor's degree and was employed from 1998 to 2005 as an operations manager earning $28,000 per year.

In finding Denise was entitled to maintenance, the family court took into consideration Denise's circumstances after twenty-six years of marriage to Saeid. Denise received the marital home and $68,646 in cash. Further, while Saeid agreed to pay Denise an additional cash settlement to equalize the division of the parties' business assets pursuant to the terms of the parties' April 10, 2008 property settlement agreement, as of January 25, 2010, Saeid had only paid Denise $140,000 of the $204,200 owed, leaving a balance of $64,200 outstanding. Despite the seemingly large amount of marital assets awarded Denise, the family court concluded Denise was unable to reasonably provide for her needs— and the needs of the parties' two minor children—using these assets. In reaching this conclusion, the family court took into consideration the parties' comfortable, although not an extravagant, lifestyle during the marriage, Denise's monthly needs, and Saeids' testimony that Denise had not had

access to his income since 2006. With respect to the oil and gas lease, the family court noted Denise shared that interest with her five siblings, and the income derived from the lease was nominal at best since Saeid and Denise did not claim any income from the lease on their 2006 or 2007 income tax returns. Accordingly, the family court's finding that Denise received little, if any, income from the oil and gas lease is supported by substantial evidence.

The family court also found Denise has a college degree and is able to work and desires to do so, but recognized that Denise voluntarily left her employment in 2005 to care for the parties' minor children and, as a result, her prior work experience was stale. To that end, the family court concluded Denise needed time to obtain gainful employment. As with other issues, when it comes to an award of maintenance, this Court "is not authorized to substitute its own judgment for that of the trial court ... where the trial court's decision is supported by substantial evidence." *Stipp v. St. Charles*, 291 S.W.3d 720, 727 (Ky.App. 2009) (citation omitted). We find no basis to disturb the trial court's decision on these matters.

Once the family court concluded Denise was entitled to maintenance, it then established the amount and duration of the maintenance award by considering the factors set forth in KRS 403.200(2), namely:

(a) The financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party as custodian;

(b) The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;

(c) The standard of living established during the marriage;

(d) The duration of the marriage;

(e) The age, and the physical and emotional condition of the spouse seeking maintenance; and

(f) The ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance.

Saeid argues the family court abused its discretion when it only "made nominal consideration of the factors required by KR 403.200." Saeid contends the family court also abused its discretion in awarding Denise "open-ended" maintenance.

█ Here, the family court concluded Denise was entitled to monthly maintenance in the amount of $750. In reaching this conclusion, the family court again emphasized Saeid and Denise had been married for twenty-six years and, during that time, enjoyed a comfortable standard of living. The evidence also established Denise was forty-five years old at the time of dissolution, and she has a college degree. During the marriage, however, Saeid was the primary breadwinner while Denise primarily cared for the family. The family court emphasized that while Denise received the marital "home and a relatively small amount of cash," Saeid received the parties' income-producing assets. Further, as referenced previously, the family court found Denise desired to re-enter the workforce, but was struggling to obtain gainful employment due to current economic conditions and her lack of recent work experience. Despite Saeid's contention to the contrary, the record reveals the family court properly considered the relevant statutory factors outlined in KRS 403.200(2). Accordingly, we cannot say the family court abused its discretion as to the amount of maintenance awarded.

Saeid argues that even if the maintenance amount is upheld, the open-ended duration of the maintenance award constituted an abuse of discretion because, at a minimum, the evidence established Denise was capable of eventually obtaining employment and, as a result, indefinite maintenance was improper. In light of the evidence, we agree that an open-ended maintenance award is not justified.

KRS 403.200 "seeks to enable the unemployable spouse to acquire the skills necessary to support himself or herself in the current workforce so that he or she does not rely upon the maintenance of the working spouse indefinitely." *Gripshover v. Gripshover,* 246 S.W.3d 460, 469 (Ky. 2008). Maintenance is designed "to facilitate one's transition from dependence upon her former spouse to independence. This is consistent with another goal of the dissolution process which is to sever all ties as much as possible as soon as possible." *Daunhauer v. Daunhauer,* 295 S.W.3d 154, 156 (Ky.App.2009). As referenced, Denise has a college degree, prior work experience, and has expressed an interest in re-entering the workforce. Denise can, with additional training, work outside her home and obtain financial independence from Saeid. To award open-ended maintenance thwarts the goal of severing all ties between the parties because it provides no incentive for Denise to timely obtain gainful employment, clearly an achievable goal. *See Richie v. Richie,* 596 S.W.2d 32, 33–34 (Ky.App.1980).

Further, as enunciated in *Castle v. Castle,* 266 S.W.3d 245 (Ky.App.2008), "an open-ended maintenance award may be modified by only two methods: (1) agreement of the parties pursuant to a separation agreement, or (2) changed circumstances so substantial and continuing as to make the terms of the award unconscionable." *Id.* at 248; KRS 403.250(1). Should Denise simply choose to maintain the status quo by not seeking employment, circumstances will not sufficiently change to justify modification or termination of maintenance.

Accordingly, we reverse only as to the duration of the maintenance award, and direct the family court to specify a fixed duration for the maintenance award. *Richie,* 596 S.W.2d at 34.

### D. Child Support and Imputation of Income

Saeid next takes issue with the family court's child support award. He argues that the family court's determination that he is voluntarily underemployed is clearly erroneous because it is not supported by substantial evidence. Saeid also asserts that the family court's finding that Denise is *not* voluntarily unemployed is likewise clearly erroneous.

"[W]hether a child support obligor is voluntarily underemployed [or unemployed] is a factual question for the [family] court to resolve." *Gossett v. Gossett,* 32 S.W.3d 109, 111 (Ky.App.2000). Accordingly, we must defer to the family court's factual findings unless they are clearly erroneous—that is, not supported by substantial evidence. CR 52.01.

We have defined 'substantial' evidence as being evidence of substance and relevant consequence, having the fitness to induce conviction in the minds of reasonable men. The test of substantiality of evidence is whether when taken alone or in the light of all the evidence it has sufficient probative value to induce conviction in the minds of reasonable men.

*Kentucky State Racing Commission v. Fuller,* 481 S.W.2d 298, 308 (Ky.1972) (citations, quotation marks, and footnote omitted). Hence, we will only reverse if

the family court's findings were unreasonable in view of all the evidence.

In establishing or modifying child support, the family court "may impute income to a party it finds to be voluntarily unemployed or underemployed." *McKinney v. McKinney*, 257 S.W.3d 130, 134 (Ky.App. 2008). KRS 403.212(2)(d) provides that:

> If a parent is voluntarily unemployed or underemployed, child support shall be calculated based on a determination of potential income.... Potential income shall be determined based upon employment potential and probable earnings level based on the obligor's or obligee's recent work history, occupational qualifications, and prevailing job opportunities and earnings levels in the community.

"[I]f the court finds that earnings are reduced as a matter of choice and not for reasonable cause," KRS 403.212(2)(d) authorizes the family court to "attribute income to a parent up to his or her earning capacity." *Snow v. Snow*, 24 S.W.3d 668, 673 (Ky.App.2000). In so doing, however, the family court "must consider the totality of the circumstances in deciding whether to impute income to a parent." *Polley v. Allen*, 132 S.W.3d 223, 227 (Ky.App. 2004).

Here, the family court found Saeid voluntarily underemployed within the meaning of KRS 403.212(2)(d). In its order, the family court explained "[f]or the period 2004 through 2007, [Saeid] has operated and continues operating businesses that do not make a profit." The family court points out that Saeid admitted "that prior to 2004, he was making good money, enough money to acquire in excess of $402,000 in assets and in excess of $100,000 in cash from Pars International." The family court concluded Saeid is capable of earning more money because he "has a history of earning substantially more money than is reflected in his cur-

rent income tax returns." In reaching this conclusion, the family court also took Saeid's earning capacity as an attorney into consideration. Ultimately, the family court imputed $20,000 per year in earnings to Saeid, thus finding Saeid's annual income to be $60,000 per year, or $5,000 per month, for child support purposes.

Saeid insists the family court failed to focus on his *recent* work history but, instead, focused on his *past* work history and, to that end, based its ruling on an economic position which no longer exists. He asserts that "[g]iven the substantial downturn in the national and global economy that began prior to the trial of this matter ... and has continued to the present day, a reasonable person would be hard-pressed to believe that a once-profitable business that was not profitable from 2004 through 2008 would be at all profitable in 2010." (Appellant's Brief at 20). Consequently, Saeid argues the family court's finding that he is *currently* or *imminently* capable of earning more than his current $40,000 salary is clearly erroneous.

In response, Denise advocates, in light of Saeid's education, expansive work history, and skills, that he has the ability to earn a reasonable living, but voluntarily chooses not to utilize his educational assets and business talents when his current business interests no longer turn a profit and, as a result, no longer produce a reasonable income. Denise also contends, and Saeid agrees, that he voluntarily chooses not to accept legal clients, but instead only takes those legal clients that "interest" him and frequently represents those clients *pro bono*.

We agree with Saeid that the downturn in the economy and the resulting decline in the fortune of his businesses, particularly Pars International, occurred through no fault of his own or by his hands. However, we cannot say that the family court's

factual determination that Saeid is voluntarily underemployed is unsupported by substantial evidence. The evidence at trial revealed Saeid is an entrepreneur, businessman, and a lawyer who holds several degrees—including a master's degree in business administration and a juris doctorate. Starting in 1984, Saeid incorporated and successfully maintained three separate businesses, including a law practice. As indicated by the family court, Saeid has the ability to earn a greater income if he chooses to fully exercise his entrepreneurial and business skills and, in light of Saeid's demonstrated past success in running his own businesses, is capable of earning more than $19.00 per hour.

Further, at trial, Denise submitted evidence that the average annual wage for attorneys, in 2007, was $72,060 per year. Even if we accept as true Saeid's position that he is incapable of currently earning more than $40,000 per year in the firearms industry due to current economic conditions, the evidence at trial revealed Saeid is certainly capable of earning more in the legal industry. Accordingly, we cannot say the family court abused its discretion in imputing additional income to Saeid. Accordingly, we will not disturb the family court's finding that Saeid is voluntarily underemployed.

We also will not disturb the family court's conclusion that Denise is *not* voluntarily unemployed. As pointed by the family court in its order, and explained in detail above, in or about 2002, the parties decided "to have more children, the youngest born in 2005. At that time, by agreement, [Denise] left her job with BB & T Bank ... to stay home with their two (2) younger children." Since then, Denise had not worked outside the home except to occasionally assist Saeid. Further, Denise testified at trial she desired to return to the workforce and was currently in the process of searching for work. Based on this, the family court concluded Denise was unemployed, and in turn her earnings reduced, for reasonable cause. KRS 403.212(2)(d). Accordingly, we cannot say the family court abused its discretion in refusing to impute income to Denise.

### E. Attorney Fees

Saeid asserts the family court abused its discretion by awarding Denise's $6,412 in attorney fees when no imbalance in financial resources existed between the parties. We disagree.

The family court retains "broad discretion in awarding attorney fees to either party in a dissolution proceeding." *Jones v. Jones*, 245 S.W.3d 815, 821 (Ky.App. 2008). In so doing, the family court "must consider the financial resources of both parties and may award attorney fees only where an imbalance of such resources exists." *Id.*; KRS 403.220. The family court "is in the best position to observe conduct and tactics which waste the court's and attorneys' time and must be given wide latitude to sanction or discourage such conduct." *Gentry v. Gentry*, 798 S.W.2d 928, 938 (Ky.1990). Accordingly, provided "the record on appeal supports the trial court's determination of an imbalance in the parties' financial resources, an award of attorney fees will not be disturbed on appeal." *Jones*, 245 S.W.3d at 821.

Here, the family court considered each party's financial resources and their current ability to earn income before determining an imbalance existed in Denise's and Saeid's respective financial resources. The record reveals the marital assets were divided nearly equally between the parties, with Saeid receiving slightly more (52% to Saeid; 48% to Denise) of the parties' business assets under the terms of their April 2008 property settlement agreement.

However, Denise received the majority of the parties' *albeit* small marital debt. It is also undisputed that, at the time of trial, Saeid's income was $40,000 per year while Denise's income was $0 per year. Further, Saeid testified that Denise had not had access to his income since 2006. Accordingly, based upon the imbalance of financial resources between the parties—particularly the parties' respective salaries and the distribution of debt—we cannot say the family court's decision to award Denise $6,412 in attorney's fees falls outside the "wide latitude" given it in such matters. *Gentry*, 798 S.W.2d at 938.

Saeid also argues the attorney's fee award is unfair and arbitrary because it failed to take into account the $7,500 already paid to Denise by Saeid, per court order, as a partial advance of attorney's fees. We are not persuaded.

The record indicates that, between December 1, 2006, and November 12, 2007, Denise incurred $22,445.19 in attorney's fees. To offset this amount, on November 19, 2007, the family court ordered Saeid to pay Denise $7,500 as a partial advance of attorney's fees. Thereafter, between March 24, 2008, and December 2008, Denise incurred additional attorney's fees in the amount of $6,412.00. It is this latter amount that the family court ordered Saeid to pay in its February 3, 2010 order. *See Brosnan v. Brosnan*, 359 S.W.3d 480, 487–88 (Ky.App.2012) (reiterating the family court retains authority to award incremental attorney's fees during the course of the divorce proceedings). Accordingly, we

will not disturb the family court's attorney's fee award.

### F. Summary of Review of the Jefferson Family Court's February 3, 2010 Order

The Jefferson Family Court's February 3, 2010 order is reversed only insofar as the family court erroneously awarded Denise "open-ended" maintenance. In all other respects, that order is affirmed.

### III. Modification of Child Custody and Timesharing

### A. Denise's Motion to Modify Timesharing

Saeid contends the family court erroneously granted Denise's motion to modify the parenting schedule because it lacked jurisdiction. We disagree.

As indicated, on June 24, 2008, Saeid and Denise entered into an agreed custody order establishing joint custody of their minor children without designating a primary residential parent. In 2009, Denise sought to relocate to Louisiana with the parties' minor children. Consequently, on June 15, 2009, Denise filed a *pro se* Notice–Motion–Order requesting a change in visitation and the parenting schedule. Saeid opposed the motion, claiming Denise was not seeking to modify visitation or timesharing but, instead, sought to modify custody. Following several delays, the family court held a hearing on Denise's motion on May 13, 2010.[7] On August 12,

---

7. On May 12, 2010, Saeid filed another affidavit and petition pursuant to KRS 26A.020 seeking to disqualify the family judge. The Chief Justice denied Saeid's petition on May 20, 2010, finding Saeid's "motion [was] insufficient to demonstrate any disqualifying circumstance that would require the appointment of a special judge under [KRS] 26A.020." (Second Appeal R. at 25). Thereafter, on August 12, 2010, the family court entered its order granting Denise's motion. Saeid maintains the family court lacked jurisdiction to conduct the May 13, 2010 hearing as a result of his pending disqualification petition. Our discussion of this issue with respect to the family court's jurisdiction to enter its February 3, 2010 order is equally applicable here and need not be repeated. Suffice it

2010, the family court granted Denise's motion to relocate, and entered an order modifying the parenting schedule; the family court subsequently denied Saeid's motion for post-judgment relief pursuant to CR 59.05.

Thereafter, on September 24, 2010, Saeid moved this Court for a writ of prohibition and for emergency relief under CR 76.36. On October 18, 2010, a three-judge panel of this Court denied the motion, having determined that Saeid had failed to meet the threshold requirements for the issuance of a writ and, in turn, denied the motion for emergency relief as moot. Saeid sought discretionary review of this Court's order, which the Supreme Court granted.

Before the Supreme Court, Saeid argued, pursuant to *Brockman v. Craig*, 205 S.W.3d 244 (Ky.App.2006), that Denise's motion to modify the parenting schedule should be construed as a motion to modify custody rather than timesharing or visitation. Saeid asserted that because Denise's motion sought to modify custody without accompanying affidavits, the family court lacked jurisdiction to consider it.[8] *Robinson v. Robinson*, 211 S.W.3d 63, 70 (Ky. App.2006) (clarifying, unlike a motion to modify timesharing, a motion to modify custody requires supporting affidavits before the trial court obtains jurisdiction over the motion).

The Supreme Court explicitly and unambiguously rejected Saeid's position:

> to say that in light of the Chief Justice's conclusion that Saeid's petition was again wholly without merit, the family court's decision to conduct the May 13, 2010 hearing was, at most, harmless error. *See generally Potter*, 167 S.W. at 406 ("[W]hatever prejudice, if any, was worked in the circuit court by the refusal of the trial judge to vacate the bench may here be remedied.").

[O]ur more recent decision in *Pennington v. Marcum*, 266 S.W.3d 759 (Ky. 2008) is controlling in this case. *Brockman* is, therefore, overruled to the extent it is inconsistent with *Pennington*.

. . . .

Under *Pennington*, a parent seeking to become a primary residential parent in a joint custody arrangement is seeking a change in timesharing, not custody. "What the father in *Fenwick* [*v. Fenwick*, 114 S.W.3d 767 (Ky.2003)] really wanted was to become the *primary residential parent*, which would be a modification of timesharing under joint custody." *Pennington*, 266 S.W.3d [759, 769 (Ky.2008) ] (emphasis added). As a result, Saeid's reliance on *Brockman* and *Crossfield* [*v. Crossfield*, 155 S.W.3d 743, 746 (Ky.App.2005) ] is misplaced and the *primary residential parent* label is not dispositive to this case.

"Custody is either sole or joint . . . and to modify it is to change it from one to the other." *Pennington*, 266 S.W.3d at 767. It follows then that a modification of custody is only necessary when the parties are seeking a change of custody from sole to joint or vice versa. Since Saeid and Denise are joint custodians, a modification of custody would only be required if one of them was seeking sole custody of the children.

Denise was not seeking to alter the nature of the joint custody.

**8.** A writ of prohibition or mandamus is available to a litigant in two instances: (1) when the trial court is proceeding outside of its jurisdiction; or (2) the trial court is acting erroneously within its jurisdiction, "and there exists no adequate remedy by appeal . . . and great injustice and irreparable injury will result if the petition is not granted." *Hoskins v. Maricle*, 150 S.W.3d 1, 10 (Ky.2004). Saeid argued the family court acted outside its jurisdiction—the first category of writs.

[C]hanging how much time a child spends with each parent does not change the legal nature of the custody ordered in the decree. This is true whether the parent has sole or joint custody: decision-making is either vested in one parent or in both, and how often the child's physical residence changes or the amount of time spent with each parent does not change this. *Id.*

Denise was not seeking to become the sole decision-maker for the minor children. She was seeking approval to relocate with the children and to adjust the time that the children spent with each of their parents in order to facilitate the relocation. Here, both parents are retaining their decision-making authority, while the time each parent spends with the children is being changed. As a result, Denise's motion does not alter the nature of the joint custody arrangement.

The family court properly construed Denise's motion as a modification of visitation and timesharing. Where the "nature of the custody does not change, the trial court is not bound by the statutory requirements that must be met for a change of custody, but can modify timesharing based on the best interests of the child as is done in modifying visitation." *Id.* at 768. Since Denise's motion did not affect the parties' joint custody, the family court did not need affidavits to acquire jurisdiction. Accordingly, we agree with the Court of Appeals' conclusion that the family court had jurisdiction to entertain Denise's motion[.]

*Shafizadeh v. Bowles*, 366 S.W.3d 373, 375–76 (Ky.2011).

While Saeid's writ petition was pending, Saeid filed a timely notice of appeal. Saeid's argument to this Court is identical to that raised before the Supreme Court,

*i.e.*, the family court lacked jurisdiction over Denise's motion because it was a disguised motion to modify custody that lacked the requisite affidavits. Despite the Supreme Court's clear and unequivocal language overruling *Brockman* to the extent it is inconsistent with *Pennington*, Saeid continues to rely on *Brockman* for the proposition that, "[w]here a custody agreement deliberately declines to name either joint custodian of minor children as the 'primary residential parent,' a parent wishing to relocate outside the court's jurisdiction may do so only by obtaining a modification of custody." (Appellant's Brief at 6). We are not persuaded, although our view is irrelevant for multiple reasons. The Supreme Court's opinion on this very issue is dispositive and warrants no further discussion.

### B. Saeid's Motion to Modify Custody

 Saeid next contends the family court erroneously denied his motion to modify custody for want of jurisdiction. We agree.

While Denise's motion to modify the parenting schedule was under submission, Saeid filed a competing motion seeking to modify the parties' joint custody status or, in the alternative, to modify timesharing. On October 21, 2010, the family court denied Saeid's motion, stating "[Saeid's] motion to modify the parties' June 24, 2008, Agreed Order regarding joint custody was made in less than two (2) years and does not have the requisite two (2) affidavits. Therefore, the [family court] will deny [Saeid's] motion to modify custody." (Second Appeal R. at 423). Saeid promptly appealed.

 A "circuit court does not acquire subject matter jurisdiction over a motion to modify a prior custody decree unless the motion is accompanied by the requisite affidavit or affidavits." *Petrey v. Cain*,

987 S.W.2d 786, 788 (Ky.1999); *Robinson,* 211 S.W.3d at 69 ("The filing of affidavits, therefore, is a jurisdictional requirement."); KRS 403.340(2) ("No motion to modify a custody decree shall be made earlier than two (2) years after its date, unless the court permits it to be made on the basis of affidavits that there is reason to believe that: (a) The child's present environment may endanger seriously his physical, mental, moral, or emotional health; or (b) The custodian ... has placed the child with a de facto custodian.").

The legislature wants stability to come into the lives of those affected by a custody decree, and it has provided for a two-year period of postdecree adjustment for the children. There is a safety valve built into the statute for situations of present environmental endangerment to the child. *The endangerment, which must be of a serious nature, must be presented to the trial court by motion "made on the basis of affidavits."* *Copas v. Copas,* 699 S.W.2d 758, 759 (Ky. App.1985) (emphasis added). Stated differently, the attached affidavits must set forth facts establishing the child's current "environment may endanger seriously his physical, mental, moral, or emotional health" thereby justifying a change in custody. KRS 403.340(2)(a).

Here, when Saeid filed his motion to modify custody on June 8, 2010, the parties' June 24, 2008 custody agreement had been in effect for less than two years. Accordingly, for the family court to acquire authority to entertain Saeid's motion, KRS 430.340(2) required Saeid to submit a timely motion with at least two affidavits attached. *Robinson,* 211 S.W.3d at 69 (explaining a motion to modify custody must be accompanied by at least two affidavits); *see also Copas,* 699 S.W.2d at 759 (two affidavits are required).

Saeid asserts the circuit court erroneously dismissed his motion for lack of jurisdiction because he attached four affidavits and two declarations "stating the reasons why the children should be returned to Jefferson County, and why remaining in Louisiana was an immediate danger to their safety and well-being." (Appellant's Brief at 18). As a result, Saeid argues, he satisfied KRS 403.340.

We first address Saeid's position that his declaration is equivalent to an affidavit and, as a result, was sufficient to satisfy KRS 403.340's affidavit requirement. A declaration is an oral or written statement. *See* Black's Law Dictionary (9th ed.2009) (defining a "declaration" as "[a] formal statement, proclamation, or announcement"). In contrast, an affidavit is "a written statement or declaration sworn to or affirmed before an officer authorized to take depositions by [these rules]." CR 43.13(1); *Wells v. Commonwealth,* 329 S.W.2d 210, 211 (Ky.1959) ("An affidavit is a written declaration or statement made under oath."); Black's Law Dictionary (9th ed.2009) (defining an "affidavit" as "[a] voluntary declaration of facts written down and sworn to by the declarant before an officer authorized to administer oaths"). Here, Saeid's declaration was inadequate to satisfy the affidavit requirement because it was not made under oath and was neither subscribed to nor sworn to before a notary who inscribed the date and location of such affirmation. CR 43.13(2) ("Every affidavit shall be subscribed by the affiant; and the certificate of the ... person before whom it is made shall be written separately, following the signature of the affiant, and shall be proof of the time and manner of the affidavit being made."). The declaration simply failed to include the indicia of truthfulness associated with a sworn, witnessed affidavit. As a result, Saeid's declaration was insufficient

to satisfy KRS 403.340's mandatory affidavit requirement.

Nonetheless, as aptly noted by Saeid, he attached four affidavits to his custody modification motion. As a result, the family court acquired subject matter jurisdiction to entertain Saeid's motion. Accordingly, we find the family court erred in dismissing Saeid's motion for lack of jurisdiction, and reverse that portion of the family court's October 21, 2010 order. On remand, the family court must ascertain whether the attached affidavits state sufficient facts justifying a hearing on Saeid's motion for a custody modification. *Petrey,* 987 S.W.2d at 788 ("Having acquired subject matter jurisdiction, the [family] court is then directed by [KRS 403.350] to summarily deny the motion if the affidavit(s) do not show adequate cause for a hearing."). If "it finds that adequate cause for hearing the motion is established by the affidavits, ... [the family court] shall [then] set a date for [a] hearing on [the] order to show cause why the requested ... modification should not be granted." KRS 403.350.

### IV. *Garnishments*

Over the course of this litigation, Denise sought, and the family court granted, three Non–Wage Garnishment Orders seeking to recover from Saeid the $6,412.50, plus interest, awarded Denise for attorney's fees and costs in the family court's February 3, 2010 Findings of Fact, Conclusions of Law, and Order.

The first garnishment order was issued on August 11, 2010; the order sought to garnish Saeid's bank account at BB & T Bank. The second garnishment order was issued on September 27, 2010. The garnishee was Shiraz Restaurant. The third garnishment order was issued on February 7, 2011. The garnishee was again BB & T Bank. All three garnishment orders included, on their face, Saeid's social security number.

On August 26, 2010, Saeid filed a motion requesting the family court discharge the first garnishment order. As grounds for his motion, Saeid asserted the garnished bank account "held his salary that was used to pay maintenance, child support, health insurance, loans and his living expenses" and, as such, should be exempt from garnishment pursuant to KRS 427.010(2). (Second Appeal R. at 102). Saeid's motion also sought redaction of his social security number, sanctions against Denise, and attorney's fees. On October 21, 2010, the family court entered an order denying Saeid's motion; however, the family court entered a second order sealing the garnishment order.

On February 24, 2011, Saeid filed a motion, substantially identical to the one filed on August 26, 2010, requesting that the family court discharge the February 7, 2011 garnishment order and, again, seeking sanctions against Denise and attorney's fees. The family court denied Saeid's motion for the same reasons expressed in its October 21, 2010 order.

Before this Court, Saeid raises three arguments pertaining to the August 11, 2010 and February 7, 2011 garnishments: [9] (1) the funds held in Saeid's BB & T bank account were exempt from garnishment pursuant to KRS 427.010(2); (2) the circuit

9. Saeid appealed the August 11, 2010 garnishment order in his second appeal, No.2010–CA–02125, and appealed the February 7, 2011 garnishment order in his third appeal, No. 0211–CA–000825. To the extent possible, we will discuss Saeid's arguments pertaining to both garnishments simultaneously. Where the context requires, we will differentiate between the garnishments. Saeid does not take issue, in either appeal, with the September 27, 2010 garnishment order.

court erroneously denied his request for a hearing on his motions to discharge the garnishments in violation of his Fourteenth Amendment due process rights; and (3) the circuit court erred in denying his request for sanctions against Denise when she repeatedly included Saeid's social security number on the garnishment orders. We are not persuaded by these arguments.

## A. Funds in Bank Account Were Not Exempt from Garnishment

A garnishment is a legal or equitable proceeding brought by the plaintiff-creditor/garnishor (Denise), against a third party/garnishee (BB & T Bank), to obtain the debtor's (Saeid's) earnings held by the garnishee, thereby satisfying a debt owed (attorney's fees) to the garnishor. KRS 427.005(3). "Earnings" include "compensation paid or payable for personal services, whether denominated as wages, salary, commission, bonus, or otherwise[.]" KRS 427.005(1).

KRS 425.501 explains the means by which a garnishor may obtain an order of garnishment. Once the garnishment order is issued, the garnishor is obligated to serve the garnishment order on the garnishee, who then delivers a copy thereof to the debtor. KRS 425.501(3). At this point, the "debtor may appear and claim the exemption of any property or debt that is exempt from execution." KRS 425.501(4). A separate statute, KRS 427.010, identifies several assets exempt from garnishment. Of particular relevance, KRS 427.010(2) provides, in

pertinent part: "the maximum part of the aggregate disposable earnings of an individual for any workweek which is subjected to garnishment may not exceed the lesser of ... (a) Twenty-five percent (25%) of his disposable earnings for that week[.]" KRS 427.010(2)(a). "Disposable earnings" are defined as "that part of the earnings of any individual remaining after the deduction from those earnings of any amounts required by law to be withheld." KRS 427.005(2).

Saeid contends his garnished BB & T bank account held his salary and wages, *i.e.*, his disposable earnings. Accordingly, Saeid asserts, pursuant to KRS 427.010(2), it is exempt from garnishment.[10] We disagree.

First, despite Saeid's contention to the contrary, KRS 427.010(2) does not operate to limit the attachment of *all* wages, but only places a limit on the *amount* of wages which may be subject to a garnishment order. *See* KRS 427.010(2).

Second, KRS 427.010(2) does not protect or exempt wages in the hands of the debtor. In reaching this conclusion, the analysis in *Brown v. Commonwealth*, 40 S.W.3d 873 (Ky.App.1999), is instructive. There, the issue before the court was whether bank accounts that contained only wages were protected by KRS 427.010(2). Specifically, the debtor in *Brown* argued his wages were traceable to his bank account, and thus the bank account was exempt from garnishment pursuant to KRS 427.010(2). The court rejected the debtor's argument. In so doing, the court

10. Concomitantly, Saeid claims his BB & T bank account is exempt pursuant to 15 U.S.C. 1673(a). This statute is part of the Consumer Credit Protection Act (CCPA) enacted by Congress in 1968. *In re: Elaine M. Sikes*, 2004 WL 2028021, at *1 (No. 04–30951) (Bankr. W.D.Ky.2004). The CCPA "preempts any less restrictive applicable state law, but states have the right to 'opt-out' of the federal exemption scheme and enact their own scheme of exemptions." *Id.* Kentucky exercised that right, choosing to enact a statutory scheme modeled on the CCPA, including KRS 427.010. *Id.* In fact, KRS 427.010(2) is virtually identical to 15 U.S.C. 1673(a). Therefore, this argument is without merit.

declined to construe KRS 427.010(2) as a restriction against the garnishment of a bank account that held wages. Instead, the court determined KRS 427.010 was not an exemption statute, but instead placed limited restrictions on garnishments. The court then concluded that such "limited protection is the same found to have been provided by the federal CCPA, that is, a limitation only on the extent to which an employee's earnings may be garnished" from his or her employer. *Id.* at 878–79. Stated differently, KRS 427.010(2) "does not shield [a debtor's] wages from garnishment after they have passed from his employer's control" and into the debtor's custody and control. *Id.* at 883.

Here, similar to the debtor in *Brown,* Saeid contends KRS 427.010(2) prohibits Denise from garnishing his BB & T bank account because the account contained only wages paid to Saeid. As explained in *Brown,* KRS 427.010(2) simply does not protect wages deposited into a bank account or otherwise placed in the debtor's control and/or possession. Accordingly, the family court did not err in denying Saeid's motion to discharge the garnishment orders on this ground.

**B. Hearing on Motion to Discharge Garnishment**

■ Saeid next claims he was deprived of his procedural due process rights when the family court refused to grant him a hearing on his motion to discharge the August 11, 2010 garnishment.[11] In support, Saeid relies on *Sniadach v. Family Finance Corp. of Bay View,* 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969). In *Sniadach,* however, the United States Supreme Court concluded the *pre-judgment* garnishment of wages without a hearing

violated due process because the debtor was not afforded an opportunity to litigate the underlying claim against him prior to the seizure of his assets. *Id.* at 341–42, 89 S.Ct. at 1822–23. Here, Denise sought a *post-judgment* garnishment of Saeid's bank account following a lengthy trial. Accordingly, Saeid's reliance on *Sniadach* is misplaced.

Further, we are not convinced that Saeid's argument that his due process rights were violated is squarely before us. Saeid challenges the constitutionality of KRS 425.501, asserting Kentucky's "statute for garnishment of banks accounts violated [his] due process requirements of prompt notice and [a] hearing." (Appellant's Brief at 21). To mount a successful challenge—whether as applied or facially—on due process grounds, Saeid was obligated to (1) raise this argument before the family court; and (2) notify the Office of the Kentucky Attorney General of his argument. KRS 418.075(1) ("In any proceeding which involves the validity of a statute, the Attorney General of the state shall, before judgment is entered, be served with a copy of the petition[.]"); *Benet v. Commonwealth,* 253 S.W.3d 528, 532 (Ky.2008). "[S]trict compliance with the notification provisions of KRS 418.075 is mandatory." *Id.* Saeid satisfied neither requirement.

First, he failed to raise this issue in the court below because he did not request a hearing to challenge his bank account as exempt property. KRS 425.501 affords the debtor an opportunity to "appear and claim the exemption of any property or debt that is exempt" from garnishment. KRS 425.501(4). However, to invoke KRS 425.501(4), the debtor must file a sworn

---

11. Saeid does not raise this same argument in his brief concerning the February 7, 2011 garnishment.

written request with the Clerk of the Court within ten days of the garnishee's date of receipt requesting a hearing. *See Brown,* 40 S.W.3d at 882–883 (noting these requirements are not contained in KRS 425.501 or CR 69.02,[12] but "are incorporated in the standard garnishment order to facilitate processing").

Despite Saeid's argument to the contrary, a review of his motion to discharge the August 11, 2010 garnishment reveals he did *not* request a hearing to challenge the garnishment of his BB & T bank account. Instead, he asked the family court "to issue an Order discharging the garnishment ... and requiring redaction of [Saeid's] personal identifier information ... and [to] schedule a *hearing concerning sanctions and attorney's fees* necessitated by the actions of [Denise's] counsel." (Second Appeal R. at 104)(emphasis added). Because Saeid did not request a hearing before the family court on the issue of whether his BB & T bank account constituted exempt property, he is not permitted to now claim he was prejudiced by the family court's failure to grant him a hearing. *Elery v. Commonwealth,* 368 S.W.3d 78, 97–98 (Ky.2012). Because Saeid has failed to raise this argument below, he is precluded from raising it now on appeal.[13]

Second, it is well-settled that this Court need not address an "argument[ ] that a statute is unconstitutional unless the notice provisions of KRS 418.075 [have] been fully satisfied." *Benet,* 253 S.W.3d at 532. Here, the record is void of any evidence that Saeid notified the Attorney General of his constitutional challenge to KRS 425.501 during the pendency of the family court proceedings. Because Saeid's constitutional challenge is unpreserved, we decline to address it.

## C. Sanctions and Attorney's Fees

■ Finally, Saeid maintains the family court erroneously denied his motions for sanctions and attorney's fees. Saeid asserts both the August 2010 and February 2011 garnishment orders were prepared with his social security number on their face in direct violation of CR 7.03(1)(a). In light of this violation, Saeid asserts he was entitled to sanctions and attorney's fees pursuant to CR 7.03(7). We disagree.

CR 7.03(1)(a) provides "in a civil filing with the court ... that contains certain personal data, including an individual's social-security number ... an attorney or party making the filing must redact the document so [the social-security number] ... cannot be read[.]" If an attorney fails to comply with this rule, he or she may be "subject to the sanction powers of the court, including having the relevant filing stricken from the record." CR 7.03(7). This rule leaves the decision whether to sanction an attorney for violating CR 7.03(1) to the trial court's sound discretion, and we will not set aside the family court's decision absent an abuse of discretion. *See Morton v. Bank of the Bluegrass and Trust Co.,* 18 S.W.3d 353, 360 (Ky.App. 1999). Here, the family court reviewed

---

**12.** CR 69.02 requires the debtor to file an objection and assert an exemption to a *wage* garnishment within 15 days "from the issuance date of the employer's garnishment check."

**13.** As referenced, Saeid does not argue in his brief to this Court that the family court violated his procedural due process rights when it denied his motion to discharge the February

7, 2011 garnishment without a hearing. Ironically, Saeid properly filed AOC Form 150.2 challenging the February 7, 2011 order garnishing his BB & T bank account, and requesting a hearing. Indeed, the family court originally scheduled a hearing on Saeid's motion on March 7, 2011; it appears, however, that the hearing did not occur.

the conduct by Denise's attorney and noted "the Order of Garnishment in question has been retained in Division 6 of the Jefferson Family Court and has not been viewed by anyone other than the parties and/or their Counsel, all of which already have this information in their possession." (Second Appeal R. at 414–415). Based on this, the family court chose not to sanction Denise. "The trial court was in the best position to determine if [Denise's counsel's] conduct warranted the imposition of sanctions." *Morton,* 18 S.W.3d at 360. We cannot say the family court abused its discretion in denying Saeid's request for sanctions.

With respect to attorney's fees, we point out that Saeid filed both his August 26, 2010 and February 24, 2011 motions *pro se.* To that end, since Saeid did not retain an attorney and, in turn, did not incur attorney's fees, there are no fees to recoup. *See Neidlinger v. Neidlinger,* 52 S.W.3d 513, 520 (Ky.2001).

In sum, we affirm the family court's October 21, 2010 and March 8, 2011 orders denying Saeid's motions to discharge the August 11, 2010 and February 7, 2011 garnishments, respectively, and for sanctions and attorney's fees.

## V. *CR 60.02 Relief*

On February 2, 2011, Saeid filed a motion pursuant to CR 60.02 seeking to correct the attorney's fees awarded in the family court's February 3, 2010 Findings of Fact, Conclusions of Law, and Order. In his motion, Saeid claimed the $6,412 attorney's fee award included $945.00 incurred by Denise's attorney in responding to a prior appeal filed by Saeid challenging the Jefferson District Court's issuance of an Emergency Protective Order in April 2008 (EPO Appeal). This Court dismissed Saeid's EPO Appeal as it was taken from a non-final order. *Shafizadeh v. Shafizadeh,* 2009 WL 961130, at *1 (2008–CA–001002–ME) (Ky.App.2009). This Court also denied Denise's request for sanctions pursuant to CR 73.02(4), finding "Saeid's appeal [was not] so totally lacking in merit as to have been taken in bad faith." *Id.* at *3. Because this Court refused to grant Denise sanctions, Saeid argued the family court was prohibited from thereafter awarding Denise attorney's fees incurred defending against the EPO appeal. As a result, Saeid moved the family court, pursuant to CR 60.02, to amend its February 3, 2010 attorney's fee award to reflect a credit of $945, thereby reducing the attorney's fee award to $5,475.50. The family court denied Saeid's motion.

The decision to deny a CR 60.02 motion is vested in the trial court's sound discretion and for that reason, "decisions rendered thereon are not disturbed unless the trial judge abused his/her discretion." *Kurtsinger v. Bd. of Trustees of Ky. Ret. Sys.,* 90 S.W.3d 454, 456 (Ky.2002); *Bethlehem Minerals Co. v. Church and Mullins Corp.,* 887 S.W.2d 327, 329 (Ky.1994). As indicated, the test for abuse of discretion is "whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English,* 993 S.W.2d 941, 945 (Ky.1999).

Before this Court, Saeid maintains the family court abused its discretion in denying his CR 60.02 motion, asserting essentially the same argument he made before the family court. We are not persuaded.

Relief pursuant to CR 60.02 is an extraordinary remedy which should be cautiously granted. *Baze v. Commonwealth,* 276 S.W.3d 761, 765 (Ky.2008); *Brozowski v. Johnson,* 179 S.W.3d 261, 263 (Ky.App. 2005). The rule may be invoked in six particular instances: "(a) mistake, inadvertence, surprise, or excusable neglect; (b) newly discovered evidence; (c) perjury or

falsified evidence; (d) fraud affecting the proceedings; (e) the judgment is void; or (f) any other reason of an extraordinary nature justifying relief." *Kurtsinger*, 90 S.W.3d at 456.

CR 60.02 offers relief not available by direct appeal. *Gross v. Commonwealth*, 648 S.W.2d 853, 857 (Ky.1983). It is not a medium for parties to re-litigate previously determined issues. *Baze*, 276 S.W.3d at 765; *Brozowski*, 179 S.W.3d at 263 (explaining CR 60.02 serves a dual purpose: "to bring before a court errors which (1) had not been put into issue or passed on, and (2) were unknown and could not have been known to the moving party by the exercise of reasonable diligence and in time to have been otherwise presented to the court").

This Court issued its opinion dismissing Saeid's EPO appeal and denying Denise's request for sanctions on April 10, 2009. Thereafter, the family court awarded Denise attorney's fees on February 3, 2010. Saeid filed a timely CR 59.05 motion to alter, amend, or vacate that Order. When the family court denied his CR 59.05 motion, Saeid filed a timely notice of appeal contesting the February 3, 2010 Order on several grounds, including the attorney's fee award. As indicated, a chief factor guiding the grant of CR 60.02 relief is the moving party's inability to present his claim prior to the entry of the order sought to be set aside. *Fortney v. Mahan*, 302 S.W.2d 842, 843 (Ky.1957). Clearly, Saeid could have, and should have, raised any issue concerning the attorney's fees award, including his claim that the fee award improperly included fees denied by this Court, in his direct appeal of the family court's February 3, 2010 order. Indeed, in his brief to this Court, Saeid admits "the entire issue of the attorney's fees are before this Court under another appeal[.]" (Appellant's Brief at 15). Accordingly, we discern no error in the family's court's denial of Saeid's CR 60.02 motion, and affirm the family court's February 21, 2011 order.

## VI. *Conclusion*

The February 3, 2010 order of the Jefferson Family Court is reversed only as to the duration of the family court's maintenance award. On remand, we direct the family court to specify a fixed duration for the maintenance award.

Likewise, the October 21, 2010 order of the Jefferson Family Court is reversed only insofar as the family court dismissed Saeid's motion for a modification of child custody on jurisdictional grounds. On remand, we direct the family court to ascertain whether the affidavits attached to Saeid's custody modification motion state sufficient facts justifying a hearing on Saeid's motion for a custody modification. If the family court finds adequate cause, it shall then conduct a hearing to determine whether to grant Saeid's motion.

In all other respects, we affirm.

ALL CONCUR.